Filed 8/27/14  Emanuel Med. Center v. Dominique CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EMANUEL MEDICAL CENTER, INC., a California corporation, | F066648 |
| Cross-complainant and Appellant, | (Super. Ct. No. 673507) |
| v. | |
| SUSAN DOMINIQUE, | **OPINION** |
| Cross-defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Stanislaus County.  Timothy W. Salter, Judge.

Sagaser, Watkins & Wieland, Howard A. Sagaser and Ian B. Wieland for Cross-complainant and Appellant.

Robinson Bradford and Matthew C. Bradford for Cross-defendant and Respondent.

-ooOoo-

Susan Dominique filed a wrongful termination lawsuit against Emanuel Medical Center, Inc. (EMC). EMC filed a cross-complaint against Dominique alleging she stole proprietary material from EMC by forwarding e-mails and attachments from her work e-mail account to her personal e-mail account. EMC alleged she committed a common law conversion and violated Labor Code section 2860, the federal Stored Communications Act (18 U.S.C. § 2701 et seq.), and California's Computer Crime Law (Pen. Code, § 502.)

Dominique challenged EMC's cross-complaint by filing a special motion to strike under California's anti-SLAPP statute.[1] The trial court granted the motion to strike, stating *Greka Integrated, Inc. v. Lowrey* (2005) 133 Cal.App.4th 1572 (*Greka*) and title 18 United States Code section 2701(c)(2) controlled on the merits.

EMC appealed, contending the anti-SLAPP motion should have been denied because neither of the two statutory conditions was satisfied. First, EMC argues its cross-complaint did not *arise from protected activity* because the gravamen of its claims concerns the theft of property, not Dominique's pursuit of her wrongful termination claim in the courts. Second, EMC contends it demonstrated the requisite probability of prevailing on its claims.

We conclude the wrongful acts alleged in EMC's cross-complaint include both protected and unprotected activity and that the protected activity is more than *merely incidental* to EMC's claims. This is so because the protected activity is a basis for showing Dominique acted wrongfully, which in turn is a basis for the general allegation of damages caused. We also conclude the declarations submitted by EMC to show it has a probability of prevailing on the merits are insufficient. For instance, EMC's description

---

[1]Code of Civil Procedure section 425.16. The acronym "SLAPP" stands for strategic lawsuit against public participation. All further statutory references are to the Code of Civil Procedure unless otherwise stated.

of its damages refers to events *in the future*, such as the potential for fines and the possibility of losing business to a competitor, and not to losses or injuries already suffered.

Therefore, we affirm the trial court's order granting the special motion to strike.

## FACTUAL AND PROCEDURAL SUMMARY

In December 2009, EMC hired Dominique to open and direct the cardiovascular services department (cardio department) at its facility in Turlock, California. Dominique alleges she successfully opened the cardio department and got it equipped, staffed, and licensed to provide multiple levels of cardiovascular care.

EMC defined a part of Dominique's responsibilities by providing her with written "Service in Excellence Standards" and requiring her to commit to those standards. One of those standards included her commitment to "always advocate for my [patients] and ensure their safety."

To obtain licensing from the state to provide full cardiac catheterization services at EMC, EMC was required to demonstrate, among other things, that it had a cardiovascular surgery service at the hospital. This was required because patients in the cardio department occasionally might need emergency surgery on very short notice. Part of Dominique's job was to ensure the cardio department followed California law, especially with regard to practices that affected patient care, such as having a cardiac surgeon available to provide emergency cardiac care.

Dominique alleges she met with great resistance in her efforts to have EMC comply with California law. In particular, she alleges Dr. Harold Tabaie would leave California to handle litigation in Florida without prior notification to the hospital. Dominique had asked him to notify her when he would be gone so she would know in advance that he would be unavailable to provide emergency cardiac surgery services. Dominique alleges Tabaie became very angry with her request, refused to comply with it, and told her he would get her fired.

3.

Dominique also asserts she personally observed numerous violations of law and regulation during her employment with EMC, some of which involved Tabaie, who she believed was putting patients at risk and causing long-term harm with either unsafe or unlawful practices. Dominique reported these violations to EMC and to legal authorities. Tabaie confronted Dominique on numerous occasions and, according to her allegations, he conspired with EMC to terminate her employment because she refused to overlook the many regulatory violations of Tabaie and others.

In October 2011, Dominique was told she was being investigated by EMC for her managerial style.

On November 18, 2011, Dominique was informed she was being placed on administrative leave and her employment would terminate on December 9, 2011. The reason given was that she had lost the support of her staff.

On November 22, 2011, Dominique came to EMC to return an EMC-issued Blackberry cell phone and laptop and pick up her personal items. Prior to the return of the Blackberry cell phone, Dominique continued to have access to company e-mails on that device, even though EMC had disabled her employee's user account that allowed active employees to access EMC's database. At the time, EMC thought that disabling her employee's user account would mean Dominique could no longer access EMC e-mails.

On March 22, 2012, Dominique filed a complaint for wrongful termination against EMC and Tabaie.

During discovery, EMC learned that Dominique continued to have access to EMC's e-mails after the November 18, 2011, meeting, where she was informed of the termination of her employment and that she had forwarded approximately 110 work-related e-mails to her personal account between November 19 and 21, 2011, while on administrative leave. EMC also learned that on October 31, 2011, Dominique forwarded to her personal account approximately 81 e-mails containing hundreds of attached EMC

4.

computer files, which included EMC policies, presentations, forms and templates, employee writeups, marketing materials, and disciplinary memoranda and reports.

In October 2012, EMC filed a cross-complaint that identified five causes of action: (1) conversion; (2) breach of loyalty concerning Labor Code section 2860;[2] (3) violation of the federal Stored Communications Act;[3] (4) violation of California's Computer Crime Law; and (5) temporary restraining order and preliminary and permanent injunctions pursuant to Civil Code section 3426.2. The basis for these claims was that Dominique wrongfully obtained and controlled the e-mails and attachments forwarded to her personal account.

In response to EMC's cross-complaint, Dominique filed an anti-SLAPP motion that sought an order striking EMC's first, second, third, and fourth causes of action.[4] The motion asserted these claims by EMC were based on the theory Dominique "gathered evidence," including some of her work e-mails, and showed them to an attorney in Southern California in an effort to sell her perceived claims against EMC. The motion contended that prelawsuit communications and the filing of her wrongful termination

---

[2]Labor Code section 2860 provides in full: "Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment."

[3]The chapter of the United States Code containing this act is entitled "Stored Wire and Electronic Communications and Transactional Records Access." (*O'Grady v. Superior Court* (2006) 139 Cal.App.4th 1423, 1440; 18 U.S.C. §§ 2701-2712.) The Stored Communications Act is different from the federal Computer Fraud and Abuse Act, which is set forth in title 18 United States Code section 1030.

[4]Dominique's motion did not seek to strike the fifth cause of action, which requested injunctive relief prohibiting the disclosure of private or confidential information about patients and employees. The fifth cause of action stated the information was protected from disclosure by the Health Insurance Portability and Accountability Act of 1996 (42 U.S.C. § 1320d et seq.), the Confidentiality of Medical Information Act (Civ. Code, § 56 et seq.), Evidence Code section 1157, and the right of privacy contained in article I, section 1 of the California Constitution.

action were constitutionally protected activities and that EMC could not demonstrate "a probability of prevailing" on the merits of its cross-complaint.

In December 2012, the trial court heard the merits of Dominique's anti-SLAPP motion and issued a minute order granting the motion, stating, "*Greka* [*Integrated, Inc.*] *v. Lowrey*[, *supra,*] 133 Cal.App.4th 1572 and 18 U.S.C. 2701(c)(2) control on the merits."

In February 2013, the trial court filed the formal order striking EMC's first four causes of action from the cross-complaint with prejudice and directing EMC to pay Dominique attorney fees in the amount of $23,800.

## DISCUSSION

### I.      California's Anti-SLAPP Statute

#### A.      Background

In 1992, the Legislature enacted section 425.16, California's anti-SLAPP statute, based on its finding that "there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (*Id.*, subd. (a); see also *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056 (*Rusheen*).)[5]  The Legislature also found and declared that "it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." (§ 425.16, subd. (a).)  The particular abuse of the judicial process targeted in section 425.16 was the act of bringing a meritless suit against someone who has exercised his or her constitutional right to free speech or right to petition.  The statute created a

_____

[5]In this case, the constitutional right in question is the right to petition set forth in subdivision (a) of section 3 of article I of the California Constitution, which states that the people have the right to "petition government for redress of grievances …."

6.

procedural remedy—specifically, a special motion to strike—designed to terminate SLAPP's at an early stage in the litigation.  (*Id.,* subd. (b)(1).)

**B.      Requirements for Granting a Motion to Strike**

The grounds for bringing an anti-SLAPP motion are set forth in subdivision (b)(1) of section 425.16, which provides:

> "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

Under this statute, a cause of action is subject to being stricken when two conditions are met.  The cause of action must (1) arise from protected speech or petitioning and (2) lack even minimal merit.  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)  Courts determine whether the two conditions have been met by using a two-step inquiry that involves shifting burdens.

### 1.      *Arising from protected activity*

Initially, the party filing the motion to strike has the burden of showing that the cause of action challenged by the motion arises from a protected activity—that is, an act in furtherance of the right of petition or free speech.  (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965 (*Zamos*).)

Disputes over whether the moving party has carried this burden usually involve one or both of the following questions:  Did the moving party's act constitute protected activity and did the cause of action arise from the protected activity?

The first of these questions involves the court applying the definition set forth in subdivision (e) of section 425.16:

> "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing

7.

made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

These categories provide the basis for analyzing whether the act or acts underlying the challenged cause of action are a protected activity.

The second question—whether the cause of action *arose from* the protected activity—concerns the strength of the connection between the protected activity and the lawsuit, a topic addressed by the California Supreme Court's decision in *City of Cotati v. Cashman* (2002) 29 Cal.4th 69 (*Cotati*). There, the owners of mobilehome parks filed a federal action against the city, contending the city's newly adopted mobilehome park rent stabilization ordinance constituted an uncompensated regulatory taking that violated due process. (*Id*. at p. 71.) In response, the city filed a state court action seeking a declaratory judgment that the ordinance was constitutional and enforceable. (*Ibid*.) The owners filed an anti-SLAPP motion challenging the city's state court action. The trial court granted the motion. The Court of Appeal reversed. The California Supreme Court affirmed the reversal, concluding the anti-SLAPP motion should have been denied by the trial court.

The Supreme Court addressed the meaning of the statutory phrase "cause of action … arising from" (§ 425.16, subd. (b)(1)) and rejected the view that "arising from" meant "in response to." (*Cotati*, *supra*, 29 Cal.4th at p. 77.) Instead, the court determined that the phrase "arising from" means simply that

> "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the

plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.]" (*Id*. at p. 78.)

Applying this interpretation to the facts presented in *Cotati*, the court determined that the city's cause of action for declaratory relief arose out of the challenged ordinance, not out of the owners' federal lawsuit, and concluded that the city's state court action was not a SLAPP. (*Cotati*, *supra*, 29 Cal.4th at pp. 74, 80.) Accordingly, when applying the phrase "arising from" to a particular case, a court must examine the activity or facts that underlie the cause of action challenged by the anti-SLAPP motion. (*Id*. at p. 79.)

### 2. *Probability of prevailing*

If the moving party has carried its initial burden, the party asserting the cause of action has the burden of demonstrating a probability of prevailing on the claim. (*Zamos*, *supra*, 32 Cal.4th at p. 965.) To satisfy this burden, the complaining party must demonstrate that its pleading is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the complaining party is credited. (*Rusheen*, *supra*, 37 Cal.4th at p. 1056.) In short, the complaining party needs to show only that (1) its pleading alleged facts that were legally sufficient to state a claim and (2) it has evidence to prove the elements of the claim.

### C. Standard of Review

"Review of an order granting or denying a motion to strike under section 425.16 is de novo." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).)

A court that reviews a special motion to strike is required by statute to "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) When considering the declarations and affidavits submitted, a court does not weigh credibility or compare the weight of the evidence. (*Soukup*, *supra*, 39 Cal.4th at p. 269, fn. 3.) The court's responsibility is to (1) accept as true the evidence favorable to the complaining party's

cause of action and (2) evaluate the moving party's evidence only to determine if it has defeated that submitted by the complaining party as a matter of law. (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)

## II. Arising from Protected Activity

### A. Allegations Underlying EMC's Causes of Action

EMC's cross-complaint alleged Dominique converted EMC's property to her own use when she forwarded more than 90 e-mails from her work e-mail account to her personal e-mail account. EMC also alleged the e-mails were its property and contained private or confidential information about patients or employees that is protected from disclosure by statute and the California constitutional right to privacy.

Dominique supports her contention that EMC's cross-complaint arose from protected activity by referring to paragraphs 8, 13, and 14 of the cross-complaint:

> "8. On or about March 22, 2012, [Dominique] filed the instant lawsuit alleging, among other things, that EMC had wrongfully terminated her employment in violation of public policy. [¶] … [¶]

> "13. EMC is informed and believes that [Dominique] forwarded these emails from her work account to her personal account in the months leading up to her termination of employment as a means of 'self-help' evidence gathering in order to use these documents in contemplated litigation against EMC, her soon-to-be former employer.

> "14. EMC is further informed and believes that once [Dominique] had these documents in her possession, she distributed some, if not all, of the documents to unknown third parties (Cross-Defendants sued herein as ROES 1 through 100), potentially including attorneys in Southern California in an effort to sell her perceived claims against EMC."

These allegations are incorporated by references into all the causes of action set forth in EMC's cross-complaint.

### B. Acts Include Protected Activity

First, the allegation in paragraph 8 that Dominique filed a wrongful termination lawsuit clearly refers to an act that is a protected activity. The filing of a complaint

10.

constitutes making a written statement before a judicial proceeding for purposes of subdivision (e)(1) of section 425.16.

Second, the allegations in paragraphs 13 and 14 that Dominique gathered the documents to use in the litigation and distributed some of the documents to attorneys "in an effort to sell her perceived claims against EMC" identify acts of communication that are preparatory to or in anticipation of bringing an action. These acts of communication are the type of statements described in clauses (1) and (2) of section 425.16, subdivision (e). (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 886-887 (*Digerati*) [prelitigation statements are protected if made in anticipation of litigation and they concern the subject of the dispute].)

Lastly, we consider whether forwarding e-mails or other materials *to oneself* constitutes protected prelitigation communication or, alternatively, is protected as free speech. We are aware of no authority stating that these acts, in themselves, are protected activity.

Therefore, we conclude that some of the acts alleged in EMC's cross-complaint are protected activity and some are not.

### C. "Arising From" Requirement

The more difficult question involving Dominique's burden is whether the "arising from" requirement was satisfied. (§ 425.16, subd. (b)(1).)

When evaluating this question, a court must consider the pleadings and the supporting and opposing declarations stating the facts upon which the liability or defense is based. (*Digerati*, *supra*, 194 Cal.App.4th at pp. 883-884.) Whether the requirement is satisfied depends on the gravamen or principal thrust of the claim. If the protected activity is *merely incidental* to a cause of action based essentially on activity that is not protected, then the cause of action does not arise from the protected activity for purposes of the anti-SLAPP statute. (*Id*. at p. 884.)

11.

Dominique contends the protected activity included in EMC's cross-complaint was not merely incidental.  Dominique cites the principle that "an alleged act is incidental to a claim, and incidental to any unprotected activity on which the claim is based, only if the act is not alleged to be the basis for liability.  [Citations.]"  (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1183 (*Wallace*).)  She also quotes the statement that a litigant "cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.'"  (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308.)

An analysis of whether a protected act was "the basis for liability" for purposes of *Wallace*, *supra*, 196 Cal.App.4th at page 1183 necessarily begins with the elements that define when a party is liable under a particular legal theory.  For instance, "'[c]onversion is the wrongful exercise of dominion over the property of another.  The elements of a conversion claim are:  (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.'"  (*Los Angeles Federal Credit Union v. Madatyan* (2012) 209 Cal.App.4th 1383, 1387.)

It appears that EMC's allegations about Dominique's use of the e-mails were an attempt to show (1) how Dominique wrongfully exercised control or dominion over the e-mails and attachments[6] and (2) the resulting damages.  Each of these points relate to an

---

[6]The additional details about control and dominion have significance in this case when compared to cases involving *tangible* personal property.  Where tangible personal property is converted, the owner usually is deprived of physical possession and the benefits that arise from that possession.  Here, Dominique's forwarding a copy of the e-mails with attachments did not deprive EMC of possession of, or access to, those documents.  As a result, EMC's theory of damages could not be based solely on the loss of benefits derived from possession.  (Cf. *ViChip Corp. v. Lee* (N.D.Cal. 2006) 438 F.Supp.2d 1087, 1098 [former CEO took proprietary information *and deleted from server*

12.

element of the conversion claim.  Furthermore, the allegations about damages are part of each of the four causes of action challenged by the anti-SLAPP motion.[7]

We recognize that EMC could have set forth a conversion claim without mentioning Dominique's lawsuit, and might have been able to set forth such a claim without the allegations about prelitigation communications related to the e-mails and attachments.  Nonetheless, courts reviewing anti-SLAPP motions do not analyze what might have been.  Instead, judicial review is based on the allegations of the pleadings before the trial court.  (See § 425.16, subd. (b)(2) [in deciding an anit-SLAPP motion, "the court shall consider the pleadings .…"].)

Our review of the allegations in EMC's pleading leads us to conclude that the allegations of protected activity are not merely incidental to the four challenged causes of action.  The disclosure of documents to counsel was part of the wrongful exercise of control over those documents and part of the wrongful conduct alleged to have caused damage.

We thus conclude Dominique has made a threshold showing that the challenged causes of action arise from protected activity.

The foregoing analysis of the allegations is compatible with the conclusion reached in *Greka, supra,* 133 Cal.App.4th 1572.  There, a company that operated an oil refinery sued a former employee (Lowrey) for breach of a nondisclosure agreement and conversion.  (*Id*. at p. 1575.)  The company alleged Lowrey took documents belonging to the company when he left his job as safety manager and subsequently disclosed

*all electronic files* related to provisional patent application; company obtained summary judgment on its conversion claim].)

[7]The allegations regarding damages for the second, third and fourth causes of action are set forth in paragraphs 29, 35 and 40, respectively.  For example, EMC's breach of loyalty claim contains the general allegation "that as a direct and proximate result of the unjust acquiring of property of [Dominique] during her employment, EMC has suffered general and special damages, in an amount to be proven at trial."

13.

proprietary and confidential information to third parties. (*Id*. at p. 1576.) Lowrey filed an anti-SLAPP motion and submitted a supporting declaration that stated he had disclosed information relating to the company's noncompliance with law and the identity of those informed of the noncompliance, such as officials at various public agencies, the district attorney, his own attorney, and family members. (*Id*. at p. 1579.) Disclosures of information also occurred in deposition and trial testimony that Lowrey gave under subpoena. (*Id*. at p. 1580.) The trial court granted Lowrey's anti-SLAPP motion. (*Id*. at p. 1577.) The Court of Appeal affirmed. (*Id*. at p. 1582.)

The appellate court analyzed the protected activity requirement by discussing Lowrey's disclosure of information and did not address specifically the act of taking the documents when he left his job. (*Greka*, *supra*, 133 Cal.App.4th at p. 1580.) The appellate court concluded the disclosures were the acts underlying both causes of action and constituted protected speech. (*Ibid*.)[8] Thus, *Greka* is an example of a case where the allegations concerning the *use* of the converted documents were not considered merely ancillary to the allegations of wrongful taking. Hence, *Greka* does not support EMC's position that Dominique's use of the e-mails, at most, was incidental to the principal thrust of its claims.

### D.     Probablity of Prevailing

#### 1.     Conversion

Dominique contends EMC has not made the requisite showing that her possession and handling of the documents was unlawful or it incurred damages.

---

[8]As to the probability of the company prevailing on its causes of action, the court noted (1) Lowrey's declaration stated he took the documents home at the direction of the company's chief executive officer and (2) the company presented no evidence to the contrary. As a result, the court concluded the company had not made a prima facie showing that Lowrey's possession was wrongful. (*Greka, supra,* 133 Cal.App.4th at p. 1581.)

14.

In contrast, EMC contends it made a prima facie showing of facts that established all three elements of a conversion cause of action.

As to the essential element of damages, EMC contends there is no question it suffered damages as a result of Dominique's acts. EMC's brief identifies two types of damage. First, EMC contends it "was forced to report the unauthorized disclosure of [the information taken by Dominique] and may be subject to fines in the future." Second, EMC contends that it "will be damaged by the unfair advantage [Dominique's] future employer (and [EMC's] competitor) will receive from [Dominique's] possession of these materials."

Both of these contentions suffer from the same flaw. They do not identify damages already incurred. Instead, they identify the possibility of a future liability (i.e., fines not yet levied) and the possibility of a future loss of business. The statement that EMC "may be subject to fines" leaves open the possibility EMC may never be fined for the allegedly unlawful disclosure. Similarly, the statement that EMC "will be damaged by the unfair advantage" a future competitor "will receive" is written in the future tense and does not identify a present injury or loss.[9]

Thus, as to the items of damages EMC has claimed, the conversion claim is premature—that is, it has not yet accrued. (See *Church v. Jamison* (2006) 143 Cal.App.4th 1568, 1582 [cause of action does not accrue until it is complete in all of its elements].) As a result, we conclude EMC has failed to make a prima facie showing that damages resulted from the alleged conversion.

---

[9]The weakness in EMC's position that it suffered damages is confirmed by its failure to provide citations to the record to support its position. (See Cal. Rules of Court, rule 8.204(a)(1)(C) [appellant's obligation to include citations to the record].) Ordinarily, a party with the burden of demonstrating a probability of prevailing on the merits would include citations to its evidentiary submissions that support a particular element of its claim.

15.

### 2. Labor Code section 2860

EMC's second cause of action was labeled "Breach of Duty of Loyalty—California Labor Code Section 2860." This cause of action included the allegations Dominique forwarded work-related e-mails and attachments to her personal e-mail account and the documents were the property of EMC pursuant to Labor Code section 2860.[10]

The elements of a cause of action for breach of the duty of loyalty by persons employed in a position of trust are (1) the existence of a relationship giving rise to a duty of loyalty, (2) a breach of that duty, and (3) damage proximately caused by that breach. (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 410.)

The final paragraph of EMC's second cause of action addresses the damage element by alleging that "as a direct and proximate result of the unjust acquiring of property [by Dominique] during her employment, EMC has suffered general and special damages, in an amount to be proven at trial."

As with its conversion claim, EMC has failed to make a sufficient prima facie showing of facts to sustain a favorable judgment on its breach of loyalty cause of action. (See *Rusheen, supra*, 37 Cal.4th at p. 1056 [prima facie showing required].) In particular, EMC has not presented evidence in declarations that, if credited as true, would prove the allegation EMC suffered damages as a result of the alleged breach of loyalty.

### 3. Penal Code section 502

In 1987, the Legislature enacted the "Comprehensive Computer Data Access and Fraud Act," which was codified as Penal Code section 502. (Stats. 1987, ch. 1499, §§ 1, 3, p. 5782.) A purpose of Penal Code section 502 is to deter and punish browsers and

---

[10]Labor Code section 2860 provides that everything that an employee acquires by virtue of his employment, except compensation, belongs to the employer.

16.

hackers—outsiders who break into a computer system to obtain or alter information. (*People v. Gentry* (1991) 234 Cal.App.3d 131, 141, fn. 8.)

A party with the burden of demonstrating a probability of prevailing on the merits of its claim usually would complete two steps before an appellate court. First, that party would identify the legal theory being asserted and the essential elements of that claim. Second, for each of the elements, the party would provide citations to its evidentiary submissions (usually declarations and exhibits to declaration) that show it can prove that element.

Here, EMC has completed neither step for the claim it is asserting under Penal Code section 502. In particular, EMC has cited no legal authority indicating, one way or the other, whether damages are an essential element of this cause of action.

We conclude that damages are an essential element of this claim for three reasons. First, an allegation of damages was included in the fourth cause of action in EMC's cross-complaint. Paragraph 40 alleges that as a "direct and proximate result of [Dominique's] unlawful conduct within the meaning of California Penal Code section 502, [Dominique] has caused loss to EMC in an amount to be proven at trial."

Second, EMC's appellate briefing has not identified the essential elements of its claim and, therefore, has cited no authority for the proposition that damages are not an essential element of its cause of action for a civil wrong under Penal Code section 502.

Third, EMC's fifth cause of action, which seeks injunctive relief and incorporates the allegations made earlier in the cross-complaint, was not the subject of Dominique's anti-SLAPP motion. Therefore, it is possible to interpret the motion and the trial court's ruling as allowing the claims for injunctive relief to continue.

As with the conversion cause of action, EMC has not presented evidence that, if credited, would prove it suffered damages as a result of Dominique's obtaining copies of e-mails from her business account at EMC.

#### 4. *Stored Communications Act*

The Stored Communications Act prohibits a party from "intentionally [accessing] without authorization a facility through which an electronic communication service is provided" or intentionally exceeding an authorization to access that facility. (18 U.C.S. § 2701(a).)

The trial court determined EMC had not shown a probability of prevailing on its cause of action under the federal Stored Communications Act and supported its determination by stating that title 18 United States Code section 2701(c)(2) controlled on the merits. That provision sets forth exceptions for matters that otherwise would fall within the offense defined in title 18 United States Code section 2701(a). The exception referred to by the trial court is for conduct authorized "by a user of that service with respect to a communication of or intended for that user." (18 U.S.C. § 2701(c)(2).)

Dominique argues she was a "user of that service" who could not be liable under the Stored Communications Act because she was the very person for whom the e-mails in question were intended. In Dominique's view, the act was not intended to cover accessing e-mails that she drafted herself or that were sent to her.

As with the previous causes of action, the elements of a civil claim under the Stored Communications Act include actual harm. (*Cornerstone Consultants, Inc. v. Prod. Input Solutions, LLC* (N.D.Ia. 2011) 789 F.Supp.2d 1029, 1047.) EMC has failed to demonstrate a probability of prevailing on the merits because it has made no showing of actual harm.

#### 5. *Computer Fraud and Abuse Act*

EMC's cross-complaint does not allege a violation of the federal Computer Fraud and Abuse Act, but EMC's opening brief asserts that employers can state civil claims against former employees under that legislation. Even if EMC were allowed to amend to allege that theory of recovery, its contention fails.

The Computer Fraud and Abuse Act is primarily a criminal statute intended to protect against traditional computer hacking. (*P.C. Younkers v. Celebrations, Superstore* (3d. Cir. 2005) 428 F.3d 504, 510.) In addition, it explicitly provides a civil remedy to "[a]ny person who suffers damage or loss by reason of a violation of this section .…" (18 U.S.C. § 1030(g).)

Because EMC has not addressed the meaning of the statutory phrase "damage or loss" and has not made a prima facie showing of a type of harm potentially covered by title 18 United States Code section 1030(g), we conclude EMC has not demonstrated a probability of prevailing on the merits of such a claim.

### DISPOSITION

The order granting the special motion to strike is affirmed. Dominique shall recover her costs on appeal.

_____

CORNELL, J.

WE CONCUR:

_____

HILL, P.J.

_____

CHITTICK, J.[*]

---

[*] Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19.