[No. B218639. Second Dist., Div. Three. Apr. 26, 2011.]

DIGERATI HOLDINGS, LLC, Cross-complainant and Appellant, v. YOUNG MONEY ENTERTAINMENT, LLC, et al., Cross-defendants and Appellants.

COUNSEL

Law Offices of Gary Freedman, Gary Freedman; Browne Woods George, Edward A. Woods, Peter W. Ross and Sonia Y. Lee for Cross-complainant and Appellant.

Lavely & Singer, William J. Briggs II and Allison Hart Sievers for Cross-defendants and Appellants.

OPINION

**CROSKEY, Acting P. J.**—Young Money Entertainment, LLC (Young Money), and Dwayne Michael Carter, Jr., sued Digerati Holdings, LLC (Digerati), and others for breach of contract and other counts relating to the production of a documentary film. Young Money and Carter allege that defendants breached the contract by failing to honor Carter's final approval rights. Digerati filed a cross-complaint against Young Money and Carter, alleging that they failed to make Carter available for filming and interviews and wrongfully interfered with the sale and distribution of the film. Young

Money and Carter filed a special motion to strike the cross-complaint under the anti-SLAPP statute (Code Civ. Proc., § 425.16).[1] The trial court denied the motion in part and granted it in part. Young Money and Carter appeal the denial of their special motion to strike as to their count for breach of contract, while Digerati appeals the granting of the motion as to the count for breach of the implied covenant of good faith and fair dealing.

The parties dispute whether the two counts arise from an act in furtherance of Young Money's and Carter's constitutional right of petition or free speech in connection with a public issue within the meaning of the anti-SLAPP statute and whether the litigation privilege applies. We conclude that the gravamen of the breach of contract count is Young Money's and Carter's alleged failure to comply with their express contractual obligations, that the count does not arise from protected activity, and that the trial court properly denied the special motion to strike as to that count. We also conclude that the count for breach of the implied covenant of good faith and fair dealing is based primarily on other conduct constituting protected petitioning activity, that the litigation privilege applies, and that the trial court properly granted the special motion to strike as to that count. We therefore will affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Factual Background

Carter is a well-known entertainer who performs under the stage name Lil Wayne. Young Money is a corporation founded by Carter. Digerati is an entertainment production company.

Young Money and Digerati entered into a written agreement for the production of a biographical documentary film about Carter. Young Money agreed that it would cause Carter to appear for formal interviews and be available for other filming "when and where required by [Digerati]," and that Digerati would be provided "non-exclusive but first-priority" access to Carter during the film production. Young Money also agreed to provide archival photographs and video footage for use in producing the film, and to use its best efforts to cause certain other individuals to appear for interviews. Young Money also agreed not to authorize the release of or allow Carter to participate in interviews for any feature-length documentary film similar in nature to the subject film.

Digerati agreed in paragraph 2(b) of the agreement that Young Money and Carter would have certain "final approval" rights: "Subject to Company's

---

[1] All statutory references are to the Code of Civil Procedure unless stated otherwise.

[(Digerati's)] distribution agreement, as between Company, on the one hand, and you [(Young Money)] and DC [(Carter)], on the other hand, DC shall have the right to inspect and/or approve the use of the DC Performance and/or the DC Materials, or any other results and proceeds of DC's services hereunder. Said approval shall not be unreasonably withheld and DC shall provide Company with written approval of the Scenes or specific written objections to the Scenes no later than 7 days (for DC's manager) and 3 days (for DC's attorney) following: (i) DC's or such applicable representative's review of the Scenes as they appear in the final cut of the Picture if DC or such applicable representative reviews the Scenes at a location designated by Company, or (ii) DC's or such applicable representative's receipt of a copy of the Scenes if Company agrees to provide DC with a copy of the Scenes for his review. Notwithstanding anything to the contrary set forth herein, DC shall have a sole right of final approval in connection with any scene(s) in the Picture that might depict or describe any of DC's actions or activities as criminal in nature or that might have any adverse affect on DC's pending criminal trials."

Another provision in the agreement stated that in the event of a breach by Digerati, the sole remedy available to Young Money and Carter was an action at law for damages, and that they could not obtain injunctive or other equitable relief.

Digerati produced a documentary film and screened a version of the film for Carter's personal manager, Cortez Bryant, in early 2008. According to Bryant, he objected to several scenes in the film and asked that they be removed, and Digerati agreed to remove the scenes but then failed to do so. According to Digerati, Bryant objected to only two scenes in the film, and Digerati removed those scenes as requested.

Digerati exhibited the film at the Sundance Film Festival in January 2009. Young Money and Carter, through their attorney, protested and demanded that Digerati cease any further exhibition of the film. Digerati refused and stated that it intended to pursue a distribution deal and exhibit the film at the Cannes Film Festival to be held in May 2009. Young Money and Carter, through their attorney, sent a letter to MTV Networks and Viacom International, Inc., in March 2009, stating that they had formally objected to scenes in the film and had not given their final approval of the film pursuant to the agreement. The letter stated that the recipients could be liable for intentional interference with contractual relations if they proceeded to acquire rights to the film and that Young Money and Carter would seek to enjoin any effort to release or display the film.

### 2. Complaint and Denial of a Preliminary Injunction

Young Money and Carter filed a complaint in March 2009 against Digerati and others. They allege that defendants breached the agreement by failing to honor Carter's final approval rights. They allege counts for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unfair competition (Bus. & Prof. Code, § 17200 et seq.); (4) intentional misrepresentation; (5) constructive fraud; (6) invasion of privacy; and (7) injunctive relief.

Young Money and Carter applied ex parte for a temporary restraining order to prevent defendants from exhibiting, distributing, licensing, selling, or otherwise exploiting the film, and requested an order to show cause regarding a preliminary injunction. They argued that public exhibition of the disputed film content could prejudice Carter's defense in his pending criminal cases and irreparably harm him. They also argued that the anti-injunction provision was unconscionable and unenforceable. They argued further that, apart from unconscionability, the anti-injunction provision was inapplicable to a breach of Carter's final approval rights. The trial court denied the application in March 2009, and later denied a preliminary injunction. On appeal, we concluded that the anti-injunction provision was not unconscionable, that the provision precluded injunctive relief, and that the denial of a preliminary injunction therefore was proper. (*Young Money Entertainment, LLC v. Digerati Holdings, LLC* (Dec. 1, 2009, B215765) [nonpub. opn.].)

### 3. Cross-complaint

Digerati filed a cross-complaint against Young Money and Carter in April 2009, alleging that they breached their express obligations under the agreement by failing to make Carter available for formal interviews in connection with the film and that Digerati had to resort to recording interviews given to other media outlets in order to obtain interview footage for the film. Digerati also alleges that Young Money and Carter breached the agreement by failing to make other individuals available for interviews as expressly agreed and failing to provide video and photographic materials for use in the film. Digerati alleges that despite these alleged breaches by Young Money and Carter, Digerati "succeeded in producing a dynamic and important documentary which received tremendous positive response at the Sundance Film Festival in January 2009."[2]

---

[2] Digerati filed an amended cross-complaint in July 2009, after the filing of the special motion to strike. Because the special motion to strike was directed at the original cross-complaint, we must disregard the amended cross-complaint in conducting our review. (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1294 [74 Cal.Rptr.3d 873].)

Digerati also alleges that Young Money and Carter falsely claimed that the version of the film exhibited at the Sundance Film Festival contained unauthorized scenes and falsely asserted a right to object to any and all scenes in the film, rather than only those scenes that might appear to depict criminal activity or that might adversely affect Carter's pending criminal trials. Digerati alleges further that after the Sundance Film Festival, Young Money and Carter "engage[ed] in a series of unreasonable, bad faith and illegal tactics to prevent the sale and distribution of the Picture." Digerati alleges that Young Money and Carter demanded that Digerati cease any further screenings until all "objectionable" scenes had been removed but refused to identify the particular scenes that they objected to, and that they sought to undermine the potential sale and distribution of the film by informing potential distributors that the film was unauthorized and could be subject to future litigation. Digerati alleges that the application for a temporary restraining order and preliminary injunction was frivolous and that Carter gave numerous interviews falsely accusing Digerati of deliberately producing a scandalous documentary. Digerati alleges that as a result, distributors terminated their discussions and negotiations with Digerati.

Following these allegations, Digerati alleges counts for (1) breach of contract, and (2) breach of the implied covenant of good faith and fair dealing. The first count incorporates by reference the prior allegations of the cross-complaint and also, in paragraph 37, repeats the allegations described above concerning breaches of express provisions of the agreement. The second count incorporates by reference the prior allegations of the cross-complaint and alleges that Young Money and Carter thereby breached the implied covenant of good faith and fair dealing.

### 4. *Special Motion to Strike*

Young Money and Carter filed a special motion to strike the cross-complaint in June 2009, arguing that their communications with Digerati and others concerning the dispute and their attempts to obtain an injunction were acts in furtherance of their constitutional right of petition or free speech, and that Digerati could not demonstrate a probability of prevailing on its claims against them. Young Money filed declarations by Carter, Bryant, and others describing events related to the dispute.

Digerati argued in opposition that its cross-complaint arose from Young Money and Carter's failure to make Carter and others available for formal interviews and from other alleged breaches of the agreement, and that the cross-complaint did not arise from communications in connection with anticipated or actual litigation. Digerati also argued that it was likely to succeed on the merits of its claims because Young Money and Carter had

breached the agreement and wrongfully interfered with Digerati's sale and distribution efforts. Digerati filed several declarations describing events related to the dispute.

After a hearing on the special motion to strike, the trial court granted the motion in part and denied it in part. The court stated in its order ruling on the motion that the gravamen of the count for breach of contract was set forth in paragraph 37 of the cross-complaint and that none of those alleged acts arose from protected activity. The court stated that the count for breach of the implied covenant of good faith and fair dealing, in contrast, was based on acts in furtherance of Young Money's and Carter's right of petition or free speech, including statements made in connection with anticipated or actual litigation. The court also stated that Digerati had failed to present admissible evidence to establish a probability of prevailing on the count for breach of the implied covenant.

Young Money and Carter timely appealed the order. Digerati also timely appealed the order.

### CONTENTIONS

Young Money and Carter contend (1) the count for breach of contract is based on statements made in connection with anticipated or actual litigation and therefore arises from acts in furtherance of their constitutional right of petition or free speech and (2) Digerati cannot establish a probability of prevailing on that count because the statements were protected by the litigation privilege (Civ. Code, § 47, subd. (b)).

Digerati contends (1) the count for breach of the implied covenant of good faith and fair dealing is based on Young Money and Carter's wrongful assertion of a right of final approval as to all scenes in the film and their bad faith performance of the agreement, rather than their statements made to distributors, and therefore does not arise from an act in furtherance of their constitutional right of petition or free speech; (2) the statements made to distributors were not made in anticipation of litigation between the parties to this action and therefore were not acts in furtherance of the constitutional right of petition or free speech; and (3) the statements made to distributors were not protected by the litigation privilege, and Digerati established a probability of prevailing on the count for breach of the implied covenant.

### DISCUSSION

1. *Special Motion to Strike*

A special motion to strike is a procedural remedy to dispose of lawsuits brought to chill the valid exercise of a party's constitutional right of

petition or free speech. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 [39 Cal.Rptr.3d 516, 128 P.3d 713].) The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance and prevent meritless litigation designed to chill the exercise of First Amendment rights. (§ 425.16, subd. (a).) The Legislature has declared that the statute must be "construed broadly" to that end. (*Ibid.*)

**(2)** A cause of action is subject to a special motion to strike if the defendant shows that the cause of action arises from an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue and the plaintiff fails to demonstrate a probability of prevailing on the claim. (§ 425.16, subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) On appeal, we independently review both of these determinations. (*Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1345–1346 [63 Cal.Rptr.3d 798].)

█ An " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' " is defined by statute to include "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) If the defendant shows that the cause of action arises from a statement described in clause (1) or (2) of section 425.16, subdivision (e), the defendant is not required to separately demonstrate that the statement was made in connection with a "public issue." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*).)

█ A cause of action is one "arising from" protected activity within the meaning of section 425.16, subdivision (b)(1) only if the defendant's act on which the cause of action is based was an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695].) In deciding whether the "arising from" requirement is satisfied, "the court shall consider the pleadings, and support-ing and opposing affidavits stating the facts upon which the liability or

defense is based." (§ 425.16, subd. (b)(2).) Whether the "arising from" requirement is satisfied depends on the " 'gravamen or principal thrust' " of the claim. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477 [87 Cal.Rptr.3d 275, 198 P.3d 66], quoting *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 193 [6 Cal.Rptr.3d 494].) A cause of action does not arise from protected activity for purposes of the anti-SLAPP statute if the protected activity is merely incidental to the cause of action. (*Martinez, supra,* at p. 188.)

■ A cause of action that arises from protected activity is subject to dismissal unless the plaintiff establishes a probability of prevailing on the claim, as we have stated. A plaintiff establishes a probability of prevailing on the claim by showing that the complaint is legally sufficient and supported by a prima facie showing of facts that, if proved at trial, would support a judgment in the plaintiff's favor. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713–714 [54 Cal.Rptr.3d 775, 151 P.3d 1185].) The court cannot weigh the evidence, but must determine as a matter of law whether the evidence is sufficient to support a judgment in the plaintiff's favor. (*Ibid.*) The defendant can defeat the plaintiff's evidentiary showing, however, by presenting evidence that establishes as a matter of law that the plaintiff cannot prevail. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].)

> 2. *The Trial Court Properly Denied the Special Motion to Strike as to the Breach of Contract Count*

Digerati alleges in its breach of contract count that Young Money and Carter breached the agreement by (1) failing to make Carter available for formal interviews; (2) "failing to make Lil Wayne available at anytime . . . in connection with the shooting of the Picture"; (3) failing to provide "first priority" access to Carter; (4) failing to provide video and photographic materials; (5) failing to make other individuals available for interviews; and (6) entering into agreements with other companies for the production of similar documentaries.[3] Digerati also incorporates by reference its prior allegations, including allegations that Young Money and Carter falsely claimed that some scenes in the film were unauthorized and falsely asserted a right to object to scenes that they were not entitled to object to under the contract and to which they had failed to timely object in writing, and allegations that they engaged in other bad faith conduct to prevent the sale and distribution of the film.

The allegations expressly set forth in the breach of contract count all concern alleged breaches of express contractual obligations. The count for

---

[3] These allegations all appear in paragraph 37 of the cross-complaint.

breach of the implied covenant of good faith and fair dealing, in contrast, does not expressly set forth the alleged misconduct, but instead only incorporates by reference all prior allegations. The two counts overlap because they incorporate the same prior allegations and because a breach of the implied covenant is necessarily a breach of contract. But this does not necessarily mean that the gravamen of the two counts is the same.

■ Every contract contains an implied covenant of good faith and fair dealing providing that no party to the contract will do anything that would deprive another party of the benefits of the contract. (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720 [68 Cal.Rptr.3d 746, 171 P.3d 1082]; *Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th 390, 400 [97 Cal.Rptr.2d 151, 2 P.3d 1].) The implied covenant protects the reasonable expectations of the contracting parties based on their mutual promises. (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 373–374 [6 Cal.Rptr.2d 467, 826 P.2d 710]; *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1395 [272 Cal.Rptr. 387].) The scope of conduct prohibited by the implied covenant depends on the purposes and express terms of the contract. (*Carma Developers, supra*, 2 Cal.4th at p. 373.) Although breach of the implied covenant often is pleaded as a separate count, a breach of the implied covenant is necessarily a breach of contract.[4] (*Careau, supra*, at pp. 1393–1394.)

Considering the complaint and the evidence presented on the anti-SLAPP motion in a practical manner and in light of the purpose of the anti-SLAPP statute, we believe that the gravamen of the two counts differs. The gravamen of the breach of contract count is Young Money and Carter's alleged failure to comply with their express contractual obligations specified in paragraph 37 of the cross-complaint, while the gravamen of the count for breach of the implied covenant of good faith and fair dealing is their alleged efforts to undermine or prevent the potential sale and distribution of the film, both by informing distributors that the film was unauthorized and could be subject to future litigation and by seeking an injunction.

Young Money and Carter do not argue and have not shown that the conduct alleged in paragraph 37 of the cross-complaint was in furtherance of their constitutional right of petition or free speech within the meaning of the anti-SLAPP statute, and we conclude that it was not. There is no indication that the alleged failure to appear for interviews or other conduct alleged in paragraph 37 involved any written or oral statement described in section 425.16, subdivision (e) or any other conduct in furtherance of the exercise of

---

[4] Breaches of distinct contractual obligations may properly be pleaded as separate counts.

the constitutional right of petition or free speech in connection with a public issue or an issue of public importance.

Accordingly, we conclude that the denial of the special motion to strike the breach of contract count was proper.

### 3. *The Trial Court Properly Granted the Special Motion to Strike as to the Count for Breach of the Implied Covenant*

#### a. *The Count for Breach of the Implied Covenant Arises from Acts in Furtherance of the Right of Petition*

Digerati alleges in its count for breach of the implied covenant that implied by law in the agreement was a duty of good faith and fair dealing that prohibited Young Money and Carter from acting in any manner that would deprive Digerati of the benefits of the agreement. Digerati incorporates the prior allegations of its cross-complaint and alleges that Young Money and Carter breached their duty of good faith and fair dealing "by engaging in the conduct above."

Digerati's prior allegations include the allegations that Young Money and Carter engaged in bad faith conduct to prevent the sale and distribution of the film by demanding that Digerati cease any further screenings of the film until all "objectionable" scenes were removed; informing distributors that the film was not authorized and threatening them with litigation; filing "a frivolous and meritless application for a temporary restraining order and a motion for preliminary injunction"; and giving interviews falsely accusing Digerati of scandalous behavior. In addition to these allegations, the introductory "summary of allegations" (italics omitted) at the beginning of the cross-complaint emphasizes in particular the alleged misrepresentations and threats made to distributors, false accusations that the film was unauthorized, and frivolous motions to seek an injunction.[5] In our view, the gravamen of the count for breach of the implied covenant of good faith and fair dealing is that this conduct frustrated Digerati's efforts to market the film and deprived Digerati of the benefits of the agreement.

Statements made before an "official proceeding" or in connection with an issue under consideration or review by a legislative, executive, or judicial body, or in any other "official proceeding," as described in clauses (1) and (2) of section 425.16, subdivision (e), are not limited to statements made

---

[5] Digerati's prior allegations also include the allegations concerning Young Money's and Carter's failure to comply with their express contractual obligations. We conclude that the gravamen of the breach of contract count is based on those allegations and that the count for breach of the implied covenant is based on other allegations, for the reasons we have stated.

after the commencement of such a proceeding. Instead, statements made in anticipation of a court action or other official proceeding may be entitled to protection under the anti-SLAPP statute. " '[J]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . such statements are equally entitled to the benefits of section 425.16.' [Citations.]" (*Briggs, supra,* 19 Cal.4th at p. 1115; accord, *Flatley v. Mauro* (2006) 39 Cal.4th 299, 322, fn. 11 [46 Cal.Rptr.3d 606, 139 P.3d 2].)

The California Supreme Court has stated that a prelitigation communication is privileged only if it "relates to litigation that is contemplated in good faith and under serious consideration." (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251 [63 Cal.Rptr.3d 398, 163 P.3d 89] (*Action Apartment*).) "Good faith" in this context refers to a good faith intention to file a lawsuit rather than a good faith belief in the truth of the communication. (*Ibid.*) Similarly, the Courts of Appeal have stated that a prelitigation statement falls within clause (1) or (2) of section 425.16, subdivision (e) if the statement " 'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated in good faith and under serious consideration" ' [citation]." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268 [73 Cal.Rptr.3d 383]; accord, *Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 37 [64 Cal.Rptr.3d 348].)

■ Digerati argues that acts relating to the formation or performance of contractual obligations are not in furtherance of the right of petition or free speech and therefore cannot be not protected activity under the anti-SLAPP statute, citing *Ericsson GE Mobile Communications, Inc. v. C.S.I. Telecommunications Engineers* (1996) 49 Cal.App.4th 1591, 1601–1602 [57 Cal.Rptr.2d 491]. The California Supreme Court rejected this same categorical argument and disapproved *Ericsson* on this point in *Navellier v. Sletten* (2002) 29 Cal.4th 82, 92–93 [124 Cal.Rptr.2d 530, 52 P.3d 703]. *Navellier* stated, "conduct alleged to constitute breach of contract may also come within constitutionally protected speech or petitioning." (*Id.* at p. 92; accord, *Midland Pacific Building Corp. v. King* (2007) 157 Cal.App.4th 264, 272 [68 Cal.Rptr.3d 499].) Whether conduct is protected under the anti-SLAPP statute depends on the nature of the conduct rather than the type of cause of action alleged. (*Navellier, supra,* at pp. 92–93.)

■ We conclude that Young Money's and Carter's statements made through their attorney to Digerati protesting the exhibition of the film and

asserting a right of final approval, and their alleged statements made to distributors that the film was not authorized and threatening them with litigation, concerned the subject of the dispute over the right of final approval and that the statements were made in anticipation of a lawsuit by Young Money and Carter against Digerati and the distributors. In light of the statements themselves, the declarations by Bryant and attorneys for Young Money and Carter describing these events, and the fact that Young Money and Carter commenced this litigation soon after the alleged statements were made to Digerati and the distributors, we conclude that the evidence compels the conclusion that, at the time they made the statements, Young Money and Carter seriously and in good faith contemplated commencing litigation against Digerati and the distributors to enforce their rights under the agreement. We therefore conclude that these prelitigation communications were statements made in furtherance of Young Money's and Carter's right of petition pursuant to clause (2) of section 425.16, subdivision (e).

The count for breach of the implied covenant also arises from the filing of an application for a temporary restraining order and a motion for preliminary injunction. Those acts involved a "written or oral statement or writing made before a . . . judicial proceeding" (§ 425.16, subd. (e)(1)) and therefore constituted protected activity under the anti-SLAPP statute.

Accordingly, we conclude that Digerati's count for breach of the implied covenant arises from protected activity under the anti-SLAPP statute.[6]

### b. The Litigation Privilege Precludes Any Probability of Prevailing on the Claim

A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes the defendant's liability on the claim. (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 323; *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 972 [106 Cal.Rptr.3d 290].) The litigation privilege precludes liability arising from a publication or broadcast made in a judicial proceeding or other official proceeding.[7] " 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of

---

[6] In light of our conclusion that the count for breach of the implied covenant arises from the protected activity discussed above, we need not decide whether Carter's alleged statements made in interviews accusing Digerati of scandalous behavior also constituted protected activity.

[7] Civil Code section 47 states, in relevant part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, except as follows . . . ."

the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.] The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' [Citation.]" (*Action Apartment, supra*, 41 Cal.4th at p. 1241.) The litigation privilege is interpreted broadly in order to further its principal purpose of affording litigants and witnesses the utmost freedom of access to the courts without fear of harassment in derivative tort actions. (*Ibid.*) The privilege is absolute and applies regardless of malice.[8] (*Action Apartment*, at p. 1241.)

 A prelitigation communication is privileged only if it "relates to litigation that is contemplated in good faith and under serious consideration" (*Action Apartment, supra*, 41 Cal.4th at p. 1251), as we have stated. The requirement of good faith contemplation and serious consideration provides some assurance that the communication has some " ' "connection or logical relation" ' " to a contemplated action and is made " ' "to achieve the objects" ' " of the litigation. (*Ibid.*) "Whether a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration is an issue of fact." (*Ibid.*; accord, *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1487 [74 Cal.Rptr.3d 1].)

We conclude that the record establishes as a matter of law that the alleged prelitigation statements on which the count for breach of the implied covenant is based related to litigation that was contemplated in good faith and under serious consideration at the time the statements were made, for the same reasons stated above. We also conclude that the filing of an application for a temporary restraining order and a motion for preliminary injunction involved statements made by litigants in judicial proceedings, logically related to the action, and to achieve the objects of the litigation. We therefore conclude that these statements made prior to or in the course of litigation were protected by the litigation privilege.[9] Digerati therefore cannot establish a probability of prevailing on its count for breach of the implied covenant, and the trial court properly granted the special motion to strike that count.

---

[8] The litigation privilege does not apply to malicious prosecution actions. (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 382 [295 P.2d 405].) *Albertson* explained, "[t]he policy of encouraging free access to the courts that underlies the absolute privilege applicable in defamation actions is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied." (*Ibid.*; accord, *Action Apartment, supra*, 41 Cal.4th at p. 1242.)

[9] Digerati presented no evidence of any other conduct allegedly constituting a breach of the implied covenant, such as Carter's alleged statements made in interviews accusing Digerati of scandalous behavior, and therefore failed to establish a probability of prevailing as to those allegations.

## DISPOSITION

The order is affirmed. Each party must bear its own costs on appeal.

Kitching, J., and Aldrich, J., concurred.

The petitions of all appellants for review by the Supreme Court were denied August 10, 2011, S193654. Kennard, J., and Werdegar, J., were of the opinion that the petition of appellant Young Money Entertainment, LLC, should be granted.