Filed 7/28/15  Lindquist v. Arthur L. Herman, LLC CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BRIAN LINDQUIST, | B256218 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC522308) |
| v. | |
| ARTHUR L. HERMAN FAMILY, LLC, et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gregory Wilson Alarcon, Judge.  Affirmed.

Law Offices of Marvin L. Rudnick and Marvin L. Rudnick for Plaintiff and Appellant.

Citron & Citron, Thomas H. Citron and Katherine Auchincloss Tatikian for Defendants and Respondents Arthur L. Herman Family, LLC, Arthur L. Herman, Arthur L. Herman Trust, Leesl Herman, Bradley Jakobsen and Jakobsen Management, LLC.

Law Offices of Lisa M. Howard, Lisa M. Howard and Steven Coard for Defendant and Respondent Rosario Perry.

_____

Brian Lindquist appeals from the trial court's order granting a special motion to strike portions of his complaint against Arthur Herman Family, LLC and related defendants, and their attorney Rosario Perry, as a strategic lawsuit against public participation pursuant to Code of Civil Procedure section 425.16 (commonly known as the anti-SLAPP statute).[1]  We affirm.

## FACTS AND BACKGROUND

On September 24, 2013, Lindquist filed a complaint against Arthur Herman Family, LLC, individual members of the Herman family, and the family's property manager Bradley Jakobsen (collectively, Herman), as well as the family's attorney Rosario Perry, alleging breach of contract, lease, and implied warranty of habitability; conversion; nuisance and negligence; abuse of process; negligent infliction of emotional distress; intentional infliction of emotional distress; and breach of the covenant of good faith and fair dealing.  Since he signed a rental agreement in December 1985, Lindquist had been a tenant in an apartment in a building Herman owned on Montana Avenue in Santa Monica.  In 2004, a crack appeared in the concrete slab floor in his apartment, causing numerous problems.  Lindquist also alleged that the apartment building was in general disrepair, and that asbestos in his apartment was a health hazard.  When Lindquist sought repairs of the foundation (among other repairs), Herman and attorney Perry "used this ruse to issue the 'three day notice' designed to rid the Defendants of Plaintiff's tenancy rather than restore the floor by falsely stating that Plaintiff refused to make the apartment available for Defendant Landlord to install new carpet to cover the broken concrete floor," so as to avoid repair and make the apartment "available at a higher rent to new, unsuspecting tenants who may not be subject to the same rate currently paid by Plaintiff under Santa Monica Rent Control."  Lindquist's maximum allowable monthly rent in July 2012, after decreases ordered by the Santa Monica Rent Control Board, was $581.  His standard rent in January 2014 was $730.13.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Herman, through his attorney Perry, issued a three-day notice to quit dated October 3, 2012. The notice stated that property manager Jakobsen had tried to enter Lindquist's apartment to replace the carpet, but Lindquist refused entry in violation of a clause in the rental agreement requiring Lindquist to allow Herman access to make repairs. If Lindquist did not either allow entry for the carpet repair on October 10, 2012, or quit the premises within three days of service of the notice, he would be subject to eviction proceedings under the Santa Monica rent control ordinance.

In the claims relevant to this appeal, Lindquist alleged against Herman and Perry that the three-day notice constituted abuse of process and misuse of the unlawful detainer laws, because the notice falsely stated that Lindquist had refused access for the carpet repair; the false notice was extreme and outrageous conduct which constituted intentional infliction of emotional distress; and the conditions in the apartment and Perry's preparation of the three-day notice constituted negligence. Against Herman only, the complaint alleged that the "attempted eviction" constituted negligent infliction of emotional distress, and that Herman breached the implied covenant of good faith and fair dealing by refusing to make the apartment habitable and instead issuing a false three-day notice. Lindquist sought compensatory and punitive damages, injunctive relief, and attorney fees.

On November 1, 2013, Perry filed a special motion to strike the complaint's three allegations against him (abuse of process, intentional infliction of emotional distress, and negligence) pursuant to section 425.16, asserting that his conduct in drafting the three-day notice to quit was protected under the statute and shielded by the litigation privilege. Perry attached a declaration from his client and defendant Leesl Herman stating that in June 2011 Lindquist had petitioned the Santa Monica Rent Control Board for rent decreases based on conditions including a worn carpet. The hearing officer ordered (among other rent decreases) a decrease in rent of $60 a month until the carpet was replaced, but Lindquist failed for six months to select new carpet from the vendor he had chosen. On October 1, 2012, Lindquist told Jakobsen that he would allow installation

3

only if certain demands were met.  Exhibits included notes dated October 4 from Lindquist to Jakobsen indicating that if Herman would sell the apartment building to Lindquist, Lindquist would not file a lawsuit.  Jakobsen served Lindquist with the notice to quit on October 5, 2012.  At the time of the carpet installation on October 10, 2012, Lindquist delivered a letter denying that he had blocked access to his apartment.  He had changed the locks long ago and Jakobsen and Herman could not get access to the apartment without Lindquist's cooperation.

On January 8, 2014, Herman filed a motion to strike four of the allegations made against Herman (abuse of process, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of the covenant of good faith and fair dealing), also pursuant to the anti-SLAPP statute.  Herman argued that those causes of action were based on the issuance of the three-day notice to quit and were therefore protected activity under the statute, and were barred by the litigation privilege.  An attached declaration by Leesl Herman stated that Lindquist's rent was $730.13 each month, and that for several years "Lindquist has been aggressively attempting to force my family to sell the Property to him" with threats of litigation, repair and rebuilding demands, and "intimidation and threatening correspondence."

In opposition to Perry's and Herman's motions to strike, Lindquist argued "the litigation privilege does not extend to acts done in bad faith," and the three-day notice was in bad faith as Lindquist never refused to allow access to his apartment for the carpet replacement.  In support, Lindquist attached a declaration from his attorney, stating that the attorney attended a December 10, 2012 hearing before the Santa Monica Rent Control Board, a recording was made during the hearing, and an attached exhibit was a "true and correct copy of a portion of  that hearing."  In the one-page exhibit, "Jakobson" stated that Lindquist "never outright refused to allow anyone in the unit but he was reluctant and he was dismissive."  In reply, Perry and Herman objected to the exhibit as irrelevant, lacking foundation, and hearsay.

4

On March 5, 2014, the trial court held a hearing after which it adopted its tentative ruling and granted the motions to strike. (Lindquist does not include any reporters' transcripts in his appellate record.) The court also sustained the evidentiary objection to Lindquist's one-page exhibit purporting to be an excerpt from the hearing before the rent control board. The court held that the notice to quit was the basis of the challenged causes of actions, bringing them within the ambit of the anti-SLAPP statute; Lindquist had not produced evidence showing a probability of prevailing on those causes of action; and the litigation privilege applied to the notice to quit, as Lindquist had not shown that the notice was merely a hollow threat of litigation. Notice of entry of the order was filed March 24, 2014.

On March 26, 2014, Herman filed a motion for attorney fees and costs of $23,415 under section 425.16, subd. (c)(1). On April 4, 2014, Perry filed a motion for attorney fees and costs of $17,219, also under the statute. In opposition, Lindquist attached two exhibits which his attorney declared were an audio recording of the hearing before the rent control board and a 128-page "true and correct copy of that hearing in the form of a transcript of the audio recording." After a hearing, the court granted the attorney fees motions in full. Notice of entry of the order was filed May 2, 2014. Lindquist filed a notice of appeal on May 8, 2014 from the March 24, 2014 order granting the motions to strike.

## DISCUSSION

"Section 425.16, known as the anti-SLAPP statute, authorizes the early dismissal of SLAPP actions; '"SLAPP" is an acronym for "strategic lawsuit against public participation . . . ."' [Citation.] Section 425.16, subdivision (b)(1) provides: 'A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' The statute provides a method for

5

summary disposition of meritless lawsuits intended "'to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.]"' [Citation.]" (*Antounian v. Louis Vuitton Malletier* (2010) 189 Cal.App.4th 438, 447.) On appeal, we review de novo the trial court's grant of an anti-SLAPP motion to strike, independently reviewing the entire record to determine (1) whether the defendant has met its burden to make a threshold showing that its action arises from protected activity, and (2) whether the plaintiff has then met its burden to show a probability of prevailing on the merits. (*Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1016–1017.)

The service of the three-day notice to quit was protected activity within the meaning of section 425.16, as "[s]ervice of a three-day notice to quit was a legally required prerequisite to the filing of [an] unlawful detainer action," and communication preparatory to the bringing of an eviction action "indisputably is protected activity." (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1480 (*Feldman*); *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281–282.) Lindquist does not argue that the notice had no connection or logical relation to a contemplated action, instead contending that the three-day notice was a prelude to an unlawful detainer action. (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 889 (*Digerati*).)

### Claims against Perry

Each of the claims against Perry (abuse of process, intentional infliction of emotional distress, and negligence) was predicated on his preparation of the warning letter and notice to quit, which, as Lindquist does not dispute, was protected activity. Lindquist argues, however, that the anti-SLAPP statute does not apply because the complaint alleged the notice to quit was "false and bogus," citing *Flatley v. Mauro* (2006) 39 Cal.4th 299, 322–325 (*Flatley*). *Flatley* held that a defendant may not use the statute where "either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity *was illegal as a matter of law*." (*Id.* at

6

p. 320, italics added.) Here Lindquist did not allege, and the defendants do not concede, that the notice to quit was illegal. Lindquist alleged only falsity, not illegality. He offered a one-page exhibit as evidence of falsity, and the trial court sustained the defendants' objections that that the exhibit was unauthenticated, inadmissible hearsay, and irrelevant. There was thus no evidence before the court at the time of the hearing that the notice was false, let alone illegal, and Lindquist does not argue that the evidentiary ruling was an abuse of discretion. Perry made the required prima facie showing that the anti-SLAPP statute applied to the claims against him.

The burden then shifted to Lindquist to show a probability of prevailing on the merits of his claims. "The litigation privilege is 'relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing.'" (*Feldman*, *supra*, 160 Cal.App.4th at p. 1485.) "'Civil Code section 47, subdivision (b), [privileges any] "publication or broadcast" made as part of a "judicial proce[dure] . . ." This privilege is absolute in nature, applying "to *all* publications, irrespective of their maliciousness,"'" which are made in judicial or quasi-judicial proceedings, by litigants or other participants to achieve the objects of the litigation, and which have "'"some connection or logical relation to the action."'" (*Ibid.*) The privilege applies not only to statements made during the procedure, "'"*but may extend to steps taken prior thereto*, or afterwards."'" (*Ibid.*) The privilege "'"immunize[s] defendants from tort liability based on theories of abuse of process [citations], intentional infliction of emotional distress [citations], . . . [citation], [and] negligence [citation] . . ."'" (*Id.* at pp. 1485–1486.) As the litigation privilege applies to the three claims against Perry, Lindquist has not shown a probability of prevailing on the merits of those claims.

**Claims against Herman**

For the same reasons as set out above, Lindquist's claims against Herman for abuse of process and intentional infliction of emotional distress were based entirely on the three-day notice to quit and thus were properly subject to the anti-SLAPP statute and

7

protected by the litigation privilege. As above, he asserts that the notice to quit was "false and bogus," but in the absence of conceded or conclusively established illegality as a matter of law, the statute applies. (*Flatley*, *supra*, 39 Cal.4th at p. 320.) Also as above, the litigation privilege applies and Lindquist has not shown a probability of prevailing on the merits of these claims.

Lindquist's claim against Herman for negligent infliction of emotional distress alleged that the condition of the apartment caused him depression and anxiety, worsened by the "attempted eviction on October 3, 2012" (the date of the notice to quit). Herman challenged this cause of action in the motion to strike, but Lindquist does not even mention it in his opposition. Nor does he mention negligent infliction of emotional distress in the list of his causes of action or anywhere else in his appellate brief. He has abandoned this cause of action by failing to address it on appeal. (*In re Marriage of Stanton* (2010) 190 Cal.App.4th 547, 561; *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685 (*Paulus*).)

Lindquist's claim against Herman for breach of the implied covenant of good faith and fair dealing argued that breach occurred when the "apartment became uninhabitable and the Landlord refused to restore the apartment to a habitable condition and instead issued a false three day notice" to escape the duty to repair, "seeking to evict Plaintiff without true cause." In his opposition to Herman's motion to strike, Lindquist stated that the breach of the implied covenant arises from the "false" three-day notice, and in his brief on appeal repeats that the claim arises from the three-day notice. He thus has forfeited any argument that the three-day notice is not the gravamen of this cause of action and was rather "merely incidental to the cause of action." (*Digerati*, *supra*, 194 Cal.App.4th at p. 884.) The claim of breach of the implied covenant of good faith and fair dealing thus also arose from protected activity under the anti-SLAPP statute. (*Id.* at p. 888.) Further, Lindquist has not shown a probability of prevailing on the implied covenant claim, as it rests on the 3-day notice, which constituted activity prior to

litigation that was protected by the litigation privilege. (*Feldman*, *supra*, 160 Cal.App.4th at p. 1485.)

**Attorney fees**

Lindquist's opening brief states that he "also appeals the Order granting attorney fees," but his notice of appeal designated only the order granting the anti-SLAPP motions entered on March 24, 2014. He makes no separate argument regarding the attorney fees. The motions for attorney fees were granted on April 25, 2014. We therefore do not have jurisdiction to address the merits of the attorney fees award. (*Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, 632–633.) In any event, "[t]he anti-SLAPP statute *requires* an award of attorney fees to a prevailing defendant." (*Paulus*, *supra*, 139 Cal.App.4th at pp. 685–686; § 425.16, subd. (c)(1).)

## DISPOSITION

The order is affirmed. Costs are awarded to respondents.

NOT TO BE PUBLISHED.

JOHNSON, J.

We concur:

CHANEY, Acting P. J.

MOOR, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.