Filed 6/24/22 New Look Skin Center v. Yerushalmi CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| NEW LOOK SKIN CENTER, INC. et al., Plaintiffs and Respondents, v. DAVID YERUSHALMI et al., Defendants and Appellants. | B310501 (Los Angeles County Super. Ct. No. 20GDCV00763) |

APPEAL from an order of the Superior Court of Los Angeles County, Ralph C. Hofer, Judge. Affirmed.

Vivoli Saccuzzo and Michael W. Vivoli for Defendants and Appellants.

Kerendian & Associates, Inc., Shab Kerendian and Edrin Shamtob for Plaintiffs and Respondents.

New Look Skin Center, Inc. and its manager Albert Markarian (collectively plaintiffs[1]) operate a medical spa that offers various body care services. They filed a complaint alleging Attorney David Yerushalmi and the Yerushalmi Law Firm, APC (collectively defendants[2]) wrongfully obtained New Look spa's confidential liability insurance information to submit a personal injury claim on behalf of a client. Defendants filed a special motion to strike the complaint under the anti-SLAPP statute, Code of Civil Procedure section 425.16. The trial court denied the motion. Defendants timely appealed. We conclude because defendants' assertedly protected activity fell within the illegality exception, the anti-SLAPP motion was properly denied and plaintiffs' complaint may proceed.

## FACTS

I. **Events Leading to the Alleged Wrongful Acts**

On August 2, 2020, Ashley Kermani purportedly suffered burns while undergoing a laser hair-removal procedure at the New Look spa. Kermani was a family friend of Attorney Yerushalmi.

On August 14, 2020, Attorney Yerushalmi phoned New Look spa and spoke to Evana Khachadoori "in reference to Ashley Kermani's burn." Yerushalmi explained that Kermani had

---

[1] We refer to New Look and Albert Markarian collectively as plaintiffs. However, in presenting the facts we refer to New Look spa and Albert Markarian individually where appropriate.

[2] We refer to Attorney Yerushalmi and the Yerushalmi Law Firm collectively as defendants. However, in presenting the facts we refer to Attorney Yerushalmi and the Yerushalmi Law Firm by name where appropriate.

unsuccessfully requested New Look spa's liability insurance information to make a claim for her injuries. Now, Attorney Yerushalmi was demanding that New Look spa produce the requested insurance information or face a lawsuit. Khachadoori replied she did not have the insurance information, but she would obtain it from New Look spa's owner and follow up with Kermani. Khachadoori added that if Kermani intended to pursue a lawsuit, she should contact New Look spa's attorneys.[3]

On August 15, 2020, Ashley Kermani retained defendants to represent her against New Look spa concerning her alleged personal injuries.

On August 17, 2020, Attorney Yerushalmi e-mailed New Look spa, identified himself as Kermani's counsel, and requested that New Look spa immediately disclose its liability insurance information.

The same day, Attorney Yerushalmi phoned New Look spa, asked to speak with Evana Khachadoori, and falsely identified himself as "Alan." When Khachadoori came to the phone, Yerushalmi made it clear he still wanted New Look spa's liability insurance information. Khachadoori advised Yerushalmi that his earlier e-mail had been forwarded to New Look spa's counsel, who would be contacting him. When Yerushalmi persisted, Khachadoori stated it would be inappropriate for her to communicate with Yerushalmi directly at this point and ended the call.

---

[3] This phone conversation as well as nearly all the others in this case were transcribed and introduced into evidence by plaintiffs at the hearing on the motion to strike the complaint.

In his declaration, Attorney Yerushalmi acknowledged he had used a false name in his August 17, 2020 phone call because Evana Khachadoori had been refusing to take his calls. Yerushalmi stated when he was transferred to Khachadoori as "Alan," he "immediately" informed her of his true name. Attorney Yerushalmi stated he regretted using a false name, but he believed he had no other choice in trying to obtain the liability insurance information from Khachadoori.

On August 24, 2020, New Look spa's counsel, Shab Kerendian of Kerendian and Associates, e-mailed Attorney Yerushalmi. Attorney Kerendian advised Yerushalmi to refrain from further contact with New Look spa. Kerendian stated that Attorney Edrin Shambob from his firm would be in touch.

In a second e-mail to Attorney Yerushalmi the same day, Attorney Kerendian stated that New Look spa "has no obligation to provide their insurance information to you at this time. [New Look spa's] relationship with their insurance company is their business and if [New Look spa] wishes to make a claim, they will do so according to the requirements of their insurance policy." Kerendian then asked Yerushalmi to send him details of the incident so he could review Kermani's claim and provide a formal response.

Attorney Yerushalmi responded by e-mail to Attorney Kerendian that he would file a lawsuit.

## II. The Alleged Wrongful Acts

### A. September 3, 2020 Phone Call to Nationwide Insurance Company

On September 3, 2020, Joshua Mosher was working as a Nationwide Insurance Company telephone representative. Mosher received a phone call from a male caller, who identified

4

himself as "Albert Markarian" from New Look Skin Center. The caller said New Look spa's "telecommunication, phone, internet everything went out" and he wanted to obtain "a copy of [New Look Skin Center's] latest declaration page for a meeting with our accountant." Believing the caller was New Look spa's manager, Albert Markarian, Mosher suggested the caller speak with the local insurance agent, who could provide the requested insurance policy declaration page. Mosher then transferred the call to New Look's local insurance agent, Colony West Financial Insurance Services.

### B. September 3, 2020 Phone Call to Colony West Financial Insurance Services

Anahi Contreras, a representative for Colony West Financial Insurance Services, received the transferred phone call from Joshua Mosher. According to Contreras's declaration, she spoke to a male caller, who introduced himself to her as " 'Albert Markarian' " and requested a copy of New Look spa's "general business insurance policy declaration page and also a certificate of insurance." The caller wanted the documents " 'for a meeting tomorrow with my accountant.' " Contreras verified Markarian's status as a client and offered to send the requested documents to Markarian's e-mail address on file. In response, the caller asked for the documents to be sent instead to a different e-mail address. Contreras agreed, but in compliance with company policy, she also sent the documents to Markarian's e-mail address on file.

### C. Markarian's Discovery of the September 3, 2020 Phone Calls and Request for Insurance Information Falsely Attributed to Him

On September 4, 2022, Albert Markarian received from Colony West Financial Insurance Services a copy of the five

insurance documents e-mailed to the male caller on September 3, 2022. Those five documents were certificates of liability insurance and evidence of property insurance. In his declaration, Albert Markarian stated that neither he nor anyone else at New Look spa had phoned or requested insurance documents from Nationwide Insurance Company, Colony West Financial Insurance Services, or Anahi Contreras on September 3, 2020. Upon receipt of the documents, Markarian phoned Contreras, who related her phone conversation with the male caller.

Later, Albert Markarian listened to Nationwide Insurance Company's audio recording of the September 3, 2020 phone conversation between Joshua Mosher and the male caller. In his declaration, Markarian stated he "immediately" noticed the caller's voice matched that of Attorney Yerushalmi as recorded in his August 14 and 17, 2020 phone calls to New Look spa. In her declaration, Anahi Contreras stated that when Markarian phoned her on September 4, 2020, she "immediately noticed" that his voice did not match the voice of the male caller who had identified himself the day before as Albert Markarian. And after listening to the two New Look spa's audio recordings, Contreras recognized Attorney Yerushalmi's voice as that of the male caller.

In his declaration, Attorney Yerushalmi stated he had hired "a licensed private investigator to try and obtain available insurance information" for New Look spa. On September 3, 2020, Attorney Yerushalmi "confirmed that [New Look spa] held an insurance policy issued by Nationwide Insurance" Company. Attorney Yerushalmi denied he had identified himself as Albert Markarian or had requested New Look spa's insurance policy or declaration page from Nationwide Insurance Company. Also submitted by Yerushalmi was the declaration of Attorney

Michael W. Vivoli, Yerushalmi's counsel in this case, who stated the voice on the audio recordings was not Attorney Yerushalmi's.

**D.     The Claim Against New Look Submitted by Defendants on Behalf of Ashley Kermani**

On September 11, 2020, Albert Markarian received an e-mail from Shelby Cadry, a claims specialist for Nationwide Insurance Company. Cadry stated she had been called on September 10, 2020, by Attorney Leah Amaro of the Yerushalmi Law Firm. Amaro told Cadry she was submitting a claim on behalf of Ashley Kermani, who purportedly had been burned by a laser hair removal procedure at the New Look spa. In submitting the claim, Amaro had used policy number ACP3056889601, which was the sole policy number listed on all five of the insurance documents previously e-mailed to the male caller. However, as Cadry informed Markarian, this was an incorrect policy number for New Look spa's liability insurance policy with Nationwide Insurance Company. Cadry requested the claim be processed under the corrected policy number.

**PROCEDURAL BACKGROUND**

On September 21, 2020, plaintiffs filed a complaint against defendants for invasion of privacy, misappropriation of name and/or likeness, negligent infliction of emotional distress, intentional infliction of emotional distress, negligent misrepresentation, intentional misrepresentation (fraud), receiving stolen property in violation of Penal Code section 496, and injunctive relief. The complaint alleged that after using a false name in an attempt to secure a copy of New Look spa's confidential liability insurance information, defendants continued to engage in surreptitious efforts to obtain the information by falsely impersonating Albert Markarian. The information

7

defendants sought was not available to the public and contained confidential insurance and related information belonging to New Look spa. Defendants used fraudulent and deceptive means to wrongfully obtain copies of the confidential information, resulting in damages to plaintiffs.

On October 8, 2020, defendants filed a complaint on behalf of Ashley Kermani against New Look spa for negligence, cosmetologist malpractice, and premise liability.

On October 19, 2020, defendants filed a special motion to strike plaintiffs' eight-count complaint under the anti-SLAPP statute, Code of Civil Procedure section 425.16. Plaintiffs filed opposition to the motion, and defendants filed a reply.

Following a hearing, the trial court ruled in plaintiffs' favor and denied the motion to strike. The court concluded defendants had failed to demonstrate the complaint arose from protected activity because the alleged wrongful conduct was conclusively shown to be illegal. This appeal followed.

## DISCUSSION

### I. Anti-SLAPP Statute and the Illegality Exception

"A SLAPP suit 'seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.]' [Citation]. '[T]he Legislature enacted [Code of Civil Procedure] section 425.16,' known as the anti-SLAPP statute, to provide 'for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' [Citations.] The statute is to 'be construed broadly.' ([Code Civ. Proc.,] § 425.16, subd. (a).)" (*Simmons v. Bauer Media Group USA, LLC* (2020) 50 Cal.App.5th 1037, 1043.) This end is achieved with a procedure

8

for striking the meritless and chilling causes of action at the earliest stage of the litigation.  The statutory procedure involves two steps.  For the first step, the moving defendant must make the threshold showing that the challenged cause of action is one "arising from" a protected activity—that is an activity "in furtherance of the person's right of petition or free speech."  (Code Civ. Proc., § 425.16, subd. (b)(1); see *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76.)  The moving defendant makes this threshold showing by demonstrating the defendant's conduct underlying the plaintiff's cause of action falls into one of four categories of protected activity.  (Code Civ. Proc., § 425.16, subd. (e).)

The categories of protected activity at issue here are any written or oral statement made before a judicial proceeding or made in connection with an issue under consideration or review by a judicial body.  (Code Civ. Proc., § 425.16, subd. (e)(1) & (2).)  Included in the two categories of protection is any litigation statement if the statement " ' "concern[s] the subject of the dispute" and is made "in anticipation of litigation 'contemplated in good faith and under serious consideration.' " ' " (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 887.)  Courts have generally taken a broad view of what constitutes litigation-related activity under Code of Civil Procedure section 425.16.  (See *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908, and cases discussed therein.)

Even if the defendant meets the threshold showing that the challenged cause of action is one arising from protected activity, if that activity is indisputably illegal, it is unprotected by the anti-SLAPP statute.  At this point of the first step, the plaintiff may counter by showing that the defendant's activity "was illegal

9

as a matter of law because either the defendant concedes the illegality of the assertedly protected activity or the illegality is conclusively established by the evidence presented in connection with the motion to strike.  In doing so, the plaintiff must identify with particularity the statute or statutes violated by the filing and maintenance of the underlying action." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 286–287; see also *Flatley v. Mauro* (2006) 39 Cal.4th 299, 320.)  The words "illegal" and "illegality" mean "criminal," rather than any violation of a statute.  (*Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1654.)

If the assertedly protected activity is indeed illegal, it is unprotected by Code of Civil Procedure section 425.16.  The motion to strike is denied and the plaintiff's complaint may proceed.  On the other hand, if the illegal activity exception does not apply, the defendant's activity is protected and the first step of the analysis is complete.

For the second step, the burden shifts to the plaintiff to demonstrate "there is a [reasonable] probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1); *Falcon Brands, Inc. v. Mousavi & Lee, LLP* (2022) 74 Cal.App.5th 506, 518.)  If the plaintiff meets this burden, the motion to strike is denied.

## II.    Standard of Review

"An order granting or denying a special motion to strike shall be appealable." (Code Civ. Proc., § 425.16, subd. (i).)  On appeal, we review either ruling de novo.  (*Monster Energy Co. v. Schecter* (2019) 7 Cal.5th 781, 788.)  We must "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (Code Civ.

10

Proc., § 425.16, subd. (b)(2); accord, *City of Cotati v. Cashman, supra,* 29 Cal.4th at p. 79.) We do not weigh credibility or compare the weight of the evidence. Instead, we accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law. (*Melamed v. Cedars-Sinai Medical Center* (2017) 8 Cal.App.5th 1271, 1286–1287.) "While we are required to construe the statute broadly, we must also adhere to its express words and remain mindful of its purpose." (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 864.)

### III.   The First Step of the Anti-SLAPP Analysis

Defendants made the threshold showing that all causes of action in plaintiffs' complaint arise from or are "based on" defendants' prelitigation activity. (See *City of Cotati v. Cashman, supra,* 29 Cal.4th at pp. 77–78.) Indeed, it is Attorney Yerushalmi's advocacy that is the target of the complaint. The primary issue is whether the exclusion from anti-SLAPP protection applies here because Yerushalmi's prelitigation activity on behalf of a client was indisputably illegal.

Plaintiffs contend Attorney Yerushalmi's challenged activity falls squarely within the illegality exception because the gravamen of all causes of action in their complaint is premised on his criminal wrongdoing—obtaining New Look spa's property in violation of Penal Code sections 532 and 496. Acknowledging that Attorney Yerushalmi has not conceded the illegality of his activity, plaintiffs argue the evidence conclusively establishes its illegality as a matter of law.

Penal Code section 532, subdivision (a) defines criminal fraud. The statute provides in pertinent part: "Every person who knowingly and designedly, by any false or fraudulent

11

representation or pretense, defrauds any other person of money, labor, or property, whether real or personal, . . . and thereby fraudulently gets possession of money or property, or obtains the labor or service of another, is punishable in the same manner and to the same extent as for larceny of the money or property so obtained."

Pursuant to Penal Code section 496, subdivision (a): "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished . . . ."

We agree with the trial court that plaintiffs conclusively established defendants either personally obtained by false pretense New Look spa's confidential insurance documents from Nationwide Insurance Company or knowingly received the stolen documents. Plaintiffs presented evidence that (1) Attorney Yerushalmi was expressly told he was not entitled to the insurance documents at the time; (2) a caller, whose voice matched Attorney Yerushalmi's, falsely claimed to be New Look spa's manager, requested the documents from Nationwide Insurance Company and its local agent, Colony West Financial Insurance Services, under the guise of an important meeting, and had the local agent route the documents to an e-mail address other than the manager's known e-mail address; (3) the documents contained confidential information belonging to New Look spa; (4) neither the manager nor anyone else at New Look spa had requested the documents; and (5) defendants submitted a claim against Nationwide Insurance Company using a distinct

12

but incorrect policy number that was taken from the stolen e-mailed documents. Further, defendants do not dispute that Attorney Yerushalmi persistently demanded the insurance documents on behalf of a family friend and later client, whom defendants then represented in a personal injury suit against New Look spa. Attorney Yerushalmi also acknowledged he had hired a private investigator to obtain the insurance documents and was aware on the date of the phone calls that New Look spa was insured by Nationwide Insurance Company.

Defendants maintain the evidence in this case fails to conclusively establish their assertedly protected activity was criminal. They argue Attorney Yerushalmi repeatedly denied calling Nationwide Insurance Company or its local agent on September 3, 2020, and their unidentified private investigator must have engaged in such wrongful conduct without their knowledge. We are not persuaded.

If defendants had not crossed the line with the September 3, 2020 phone calls, their use of the incorrect policy number from New Look spa's stolen documents for submitting a personal injury claim on September 11, 2020, clearly did. As discussed above, Penal Code section 496, subdivision (a) outlaws "receiv[ing] any property that has been stolen or that has been obtained in any manner constituting theft . . . knowing the property to be so stolen" or "withholding any property from the owner, knowing the property to be so stolen." Defendants offered no explanation of how they came into possession of insurance documents to which they were knowingly not entitled and then withheld from plaintiffs. (See *People v. Vallee* (1970) 7 Cal.App.3d 167, 172 [proof that property was received, concealed, or held with knowledge it was stolen may be shown by possession

13

of stolen property, accompanied by an unsatisfactory explanation of the possession or by suspicious circumstances].) Had Colony West Financial Insurance Services not tracked the stolen insurance documents, the theft would never have been uncovered.[4]

We can envision no situation in which counsel's commission of receiving stolen property in the course of representing a client qualifies as protected activity under the anti-SLAPP statute. (See, e.g., *Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 446 ["Under no factual scenario offered by [the defendant] is such wiretapping activity protected by the constitutional guarantees of free speech and petition"].)

The trial court properly denied defendants' special motion to strike the complaint under the anti-SLAPP statute, Code of Civil Procedure section 425.16. Because we conclude the illegality exception applies to exclude defendants from anti-SLAPP protection, we need not consider whether plaintiffs have demonstrated a reasonable probability of prevailing on the merits

---

[4] At oral argument, counsel for Yerushalmi argued that his client would have been able to secure the contested insurance documents through discovery and that we should consider this contention. The court rejects this "no harm, no foul" argument as it would condone the use of improper "self-help" means to extract information extrajudicially. The fact is that Yerushalmi chose not to use proper discovery procedures but to use the illegal means which we find violated New Look spa's rights under *Flatley v. Mauro, supra*, 39 Cal.4th at page 320. Further, as New Look spa's counsel noted during oral argument, in this instance Yerushalmi obtained documents to which he would not have been entitled through discovery.

of their complaint.  (*Falcon Brands, Inc. v. Mousavi & Lee, LLP, supra,* 74 Cal.App.5th at p. 523.)

## DISPOSITION

The order is affirmed.  Plaintiffs New Look Skin Center, Inc. and Albert Markarian shall recover their costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.