Filed 2/18/16  People ex rel. Allstate Ins. Co. v. William Berg and Berg Injury Lawyers CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA EX REL. ALLSTATE INSURANCE COMPANY, ET AL., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> WILLIAM BERG AND BERG INJURY LAWYERS, INC., <br><br> Defendants and Appellants. | A139054 <br><br> (Alameda County <br> Super. Ct. No. RG10510153) |

Plaintiff Allstate Insurance Company (Allstate) sued several members of an alleged insurance fraud ring, claiming they caused Allstate and other insurance companies to pay out more than they should under insurance policies for personal injuries.  Defendants Berg Injury Lawyers and its named partner, William Berg (collectively referred to as "Berg"), were key players in this scheme.  Berg allegedly referred clients to certain medical providers who, in turn, would recommend unnecessary surgical procedures, which allowed Berg to make inflated demands for payment under the insurance policies.

Berg filed a special motion to strike pursuant to Code of Civil Procedure[1] section 425.16, arguing that its demands to Allstate were protected petitioning activity, and that Allstate had no probability of prevailing on its insurance fraud claim because

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

Berg's conduct was protected by the litigation privilege. The trial court denied the motion, concluding that although Berg engaged in a protected activity, its conduct was not privileged.

We will reverse. We agree with the trial court that Berg's conduct is protected petitioning activity. We also conclude that Berg's conduct is protected by the litigation privilege. As such, the trial could should have granted Berg's motion.

## I. BACKGOUND

### A. *The Complaint*

Allstate commenced this lawsuit as a qui tam action, naming as defendants various medical providers, medical centers, and diagnostic facilities.[2] Allstate alleges that the defendants violated Insurance Code section 1871.7, subdivision (b). That subdivision incorporates violations of Penal Code section 550, which makes criminal a broad array of conduct relating to the false submission of insurance claims.[3]

As relevant to this appeal, Allstate alleges that certain defendants solicited unnamed personal injury attorneys to refer their clients into a network of medical providers. From there, providers within the network would form medical opinions that the clients were candidates for surgical procedures when, in fact, they were not. "In doing so, the network providers . . . ma[d]e material misrepresentation of facts with the intent to falsely give the impression of serious injury where it does not otherwise exist, and to falsely justify unnecessary, expensive and questionable medical procedures . . . regardless of medical necessity or actual patient need." The treatment recommended by the network providers was "governed, at least in part, by available insurance proceeds and not by medical necessity or reasonable patient care." After the network providers

---

[2] Four separate Allstate entities were named as plaintiffs. For ease of reference, we will refer to them collectively as "Allstate."

[3] Allstate also alleged a cause of action for violation of Business and Professions Code section 17200. The parties agree that the cause of action under Business and Professions Code section 17200 rises and falls with the cause of action for violation of Insurance Code section 1871.7, so we will limit our discussion to Insurance Code section 1871.7.

recommended such procedures, they would prepare "false and fraudulent reports" and provide them to the attorneys, who would present the reports to Allstate as part of a demand for payment of a loss or injury under an insurance policy.

Berg was not named as a defendant in the amended complaint. In April 2013, Allstate amended its complaint by substituting Berg in place of unnamed Doe defendants.[4]

## B.    The Special Motion to Strike

Berg filed a special motion to strike Allstate's complaint under the anti-SLAPP statute. Berg argued that Allstate's complaint arose from Berg's "lawful and protected petitioning activity in personal injury settlement negotiations and litigation on behalf of injured clients with claims against Allstate and its insureds." Berg further argued that Allstate could not establish a probability of prevailing on the merits because Berg's alleged conduct was protected by the litigation privilege.

Berg's special motion to strike included a declaration from William Berg, in which he stated that him and his firm "have been litigation adversaries of [Allstate] for decades in hundreds of cases[.]" He stated "[i]t is the policy of Berg Injury Lawyers to make settlement demands in good faith and with the lawful intent of compromising either potential future litigation or existing litigation fairly for its clients. If a pre-litigation matter can be reasonably settled through good-faith negotiations, then Berg Injury Lawyers will pursue a negotiated resolution in order to avoid filing a complaint for a client. However, to the extent that the matter cannot be reasonably compromised, then Berg Injury Lawyers will pursue litigation on behalf of its clients as appropriate." Mr. Berg also denied that he or anyone at his firm dictated medical treatment for clients.

Allstate opposed the motion. Allstate argued that the submission of insurance claims was not protected activity because it was not related to litigation but was instead done in the ordinary course of business. It also argued that Berg's conduct of submitting insurance claims to Allstate was not protected activity because it was criminal in nature.

---

[4] Allstate advised the trial court that Berg is the only remaining defendant in this case and that the other defendants have tentatively settled with Allstate.

3

Allstate argued that even if Berg demonstrated that its activity was protected under the anti-SLAPP statute, it had demonstrated a probability of prevailing on the merits because Bergs' acts were not protected by the litigation privilege.

Allstate's opposition included a "representative sampling" of three demand letters submitted by Berg to Allstate. One letter related to a "first-party" claim in which Berg made a demand for $70,000 on behalf of its client to Allstate pursuant to an underinsured motorist provision in the client's automobile insurance policy. The other two letters related to "third-party" claims. In them, Berg claimed that Allstate's insured was liable for personal injuries sustained by Berg's clients and detailed the medical treatment its clients received. One of the letters made a $100,000 settlement demand. The other requested that Allstate disclose the amount of its insured's policy limits and stated that if Allstate refused to disclose the policy limits, Berg and its client "will have no alternative but to proceed with litigation."

In a declaration filed with Berg's reply brief, Mr. Berg stated that the three representative letters selected by Allstate involved matters that were eventually litigated after Berg sent its demand letters to Allstate.

## C.      *The trial court's ruling*

The trial court denied Berg's special motion to strike. Under the first step of the analysis, it found that Berg's demand letters "are fairly construed as pre-litigation demand letters" and therefore constituted protected petitioning activity. However, under the second step of the anti-SLAPP analysis, the trial court concluded that Allstate demonstrated a probability of prevailing on the merits because Berg did not establish that the demand letters were protected by the litigation privilege. The trial court reasoned that "[a] ruling that the litigation privilege immunizes false claims in pre-litigation communications would frustrate the important public polices underling the anti-fraud statute by protecting the very conduct the statute makes actionable (and Penal Code section 550 makes criminal)."

Berg timely filed this appeal.

4

## II. DISCUSSION

### A. *Applicable Law and Standard of Review*

"A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted . . . section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056.) The statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff [or cross-complainant] has established that there is a probability that the plaintiff [or cross-complainant] will prevail on the claim." (§ 425.16, subd. (b)(1).) The Legislature has directed that the language of the statute be "construed broadly." (§ 425.16, subd. (a).)

A court's consideration of an anti-SLAPP motion involves a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

We review the trial court's decision to grant or deny an anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) In doing so, we consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) " 'However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the

5

evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citation.]" (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 326.)

**B. Protected Activity**

Berg argues that the demand letters it sent to Allstate were "classic petitioning activity" that the anti-SLAPP statute protects. Allstate disagrees, and argues that Berg was not engaging in protected petitioning activity because it merely sought performance under insurance policies but did not have reason to believe that its demands would be rejected and litigation would follow. It further argues that Berg was not engaging in protected activity because its alleged conduct was criminal. Allstate contends that the trial court erred in ruling that Berg was engaging in protected petitioning activity, and asks us to affirm the trial court's denial of Berg's motion on this ground.

*1. Berg engaged in protected pre-litigation activity.*

Subdivision (e) of section 425.16 identifies four general categories of activities that constitute protected " 'act[s] in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' " At issue here are subdivisions (e)(1) and (e)(2), which describe as an act in furtherance of the right of petition any written or oral statement or writing made "before" a judicial proceeding or "in connection with" an issue under consideration or review by a judicial body.

Communications preparatory to or in anticipation of litigation are protected petitioning activity under subdivisions (e)(1) and (e)(2) if they relate to litigation that is " ' " 'contemplated in good faith and under serious consideration.' " [Citation].' " (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 887; see also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2015) ¶ 7:625 ["Lawsuits predicated on prelitigation statements or writings may be subject to an anti-SLAPP motion"].) "[T]he good faith and serious consideration of litigation test . . . is addressed to the requirement the statements 'have some connection or logical relation to the action. [Citations.]' [Citation.]" (*Aronson v. Kinsella* (1997) 58

6

Cal.App.4th 254, 266.) "In other words, if the statement is made with a good faith belief in a legally viable claim and in serious contemplation of litigation, then the statement is sufficiently connected to litigation . . . ." (*Ibid.*) [5]

Here, Berg's demand letters were made in good faith and under serious consideration of litigation, and therefore constitute protected petitioning activity. Berg's practice was to pursue a settlement of its clients' cases whenever feasible, but also pursue litigation on behalf of its clients in the event a matter could not be settled. This practice is reflected in the three representative demand letters submitted to the trial court. In the first-party demand letter, Berg stated it wanted to "explore the possibility of settlement" and "avoid the delays and expenses inherent in litigation." Berg then detailed the medical treatment its client purportedly received and made a settlement offer, but also stated that its client "hereby demands arbitration" in the event a settlement is not reached. In the two third-party demand letters, Berg also stated that it wanted to explore a settlement in order to avoid litigation. [6] Berg went on to claim that Allstate's insured was "responsible for all damages and losses" caused by the accidents at issue, and detailed the medical treatment received by its clients. In one of the letters, Berg informed Allstate that "if you refuse to disclose your insured's policy limits at this time, we will have no alternative but to proceed with litigation." The other letter did not include an express threat to commence litigation, but did state that if Allstate rejected Berg's demand, Berg

---

[5] *Aronson* addressed whether a prelitigation demand letter was protected by the litigation privilege. (*Aronson v. Kinsella, supra*, 58 Cal.App.4th at p. 272.) Cases addressing the litigation privilege are useful in determining if a defendant's conduct is protected petitioning activity under the anti-SLAPP statute since statements protected by the litigation privilege " 'are equally entitled to the benefits of section 425.16.' [Citations.]" (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115.)

[6] Allstate argues that Berg could not have contemplated litigation seriously and in good faith because Berg's goal in making demand letters was to settle claims without litigation. This argument is wholly without merit given that Berg actually litigated several cases against Allstate. Moreover, an attorney can have the noble goal of settling a matter while also seriously contemplating that litigation will occur.

would "view this as a case where [Allstate] had an opportunity to settle within its insured's policy limits and that it failed to do so."

Even more telling than the content of the three demand letters is the fact that Berg initiated litigation against Allstate in those three matters after Allstate rejected Berg's demands. This strongly indicates that Berg was contemplating litigation in good faith when it made settlement demands to Allstate, and was not merely making empty threats. (See *Digerati Holdings, LLC v. Young Money Entertainment, LLC, supra*, 194 Cal.App.4th at p. 888 [actually commencing litigation was evidence that prior demand letter was made in good faith contemplation of litigation].) Indeed, it is undisputed that Berg litigated hundreds of cases involving Allstate. Taken together, these circumstances indicate that Berg's demand letters to Allstate were sent "with a good faith belief in a legally viable claim and in serious contemplation of litigation." (*Aronson v. Kinsella, supra*, 58 Cal.App.4th at p. 266.)

In arguing that Berg's conduct is not protected activity, Allstate places heavy reliance on *People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809 (*Anapol*). In that case, an insurance company sued several participants of an alleged insurance fraud ring, including two attorneys, alleging they submitted false or inflated insurance claims for damage caused by wildfires. (*Id.* at p. 814.) The two attorneys brought anti-SLAPP motions, arguing that their submission of insurance claims was protected petitioning activity. The trial court found the activity was not protected under the anti-SLAPP statute, and the appellate court affirmed. (*Id.* at p. 821.) It held that one of the attorney's failed to establish that he engaged in protected activity because he submitted claims that "simply sought settlement," and "[f]ar from declaring that each claim was submitted with the expectation of litigation, [the attorney] declared that most of the claims were, in fact, settled without litigation." (*Id.* at p. 828.) As to the second attorney, the court held that he failed to show his submission of insurance claims was protected because he "relie[d] solely on his self-serving declaration that, in his own mind, at the time he submitted the claims, his mindset was that the claims would likely be denied and litigation would be necessary." (*Id.* at p. 830.)

8

*Anapol* is distinguishable on its facts, and actually supports a finding in this case that Berg engaged in protected petitioning activity. Berg did more than submit insurance claims that "simply sought settlement." (*Anapol, supra*, 211 Cal.App.4th at p. 828.) It submitted detailed demand letters claiming that Allstate was required to pay Berg's clients under insurance policies, and it threatened Allstate with litigation in the event a settlement could not be reached. The *Anapol* court believed that while mere insurance claims would ordinarily not be considered protected petitioning activity, prelitigation demand letters like the ones at issue here "likely constitute[] protected prelitigation conduct" under the anti-SLAPP statute. (*Ibid.*)

*Anapol* is also distinguishable because it involved only first-party insurance claims, the submission of which was a "necessary prerequisite to obtaining performance under the insurance contract." (*Anapol, supra*, 211 Cal.App.4th at p. 827.) As such, the *Anapol* court could not determine by the mere submission of a claim whether it was a "simple claim for payment submitted in the usual course of business" or was made in contemplation of litigation. (*Id.* at p. 829.) (*Ibid.*) The same concern is not present in this case. Berg's demand letters, which related to both first- and third-party claims, do not appear to have been a necessary prerequisite to receiving payment under the insurance policies. The content of the letters makes clear that they were not a simple claim for payment, but were instead settlement demands that were a precursor to litigation.[7]

The other cases Allstate relies on to support its argument that Berg was not engaging in a protected activity are also distinguishable on their facts. In *People ex rel. 20th Century Ins. Co. v. Building Permit Consultants, Inc.* (2000) 86 Cal.App.4th 280,

---

[7] *Kajima Engineering and Const., Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921 is distinguishable for similar reasons. There, a contractor claimed that he engaged in protected activity when he submitted allegedly inflated construction claims in connection with a public project. (*Id.* at p. 932.) The court rejected his argument because "[t]he submission of contractual claims for payment in the regular course of business before the commencement of litigation simply is not an act in furtherance of the right of petition or free speech within the meaning of the anti-SLAPP statute." (*Ibid.*) Berg's letters were more than claims made in the ordinary course of business.

9

the court held that a construction company's preparation of allegedly fraudulent damage reports that were eventually submitted with insurance claims was not a protected activity, even though some of the reports were later used in bad faith cases brought against the insurance company. (*Id.* at p. 285.) Here, Berg did more than prepare reports that were submitted at a later time with an insurance claim. It sent demand letters directly to Allstate in which it detailed the basis for its settlement demand and threatened litigation in the event a settlement could not be reached. In *Beach v. Harco National Ins. Co.* (2003) 110 Cal.App.4th 82, the court held that an insurance company's alleged bad faith conduct was not protected petitioning activity because it centered on the insurance company's "delay in responding to and resolving plaintiff's claim," as opposed to any litigation related activity. (*Id.* at p. 94.) The allegations against Berg are not based on its inaction, but instead based upon its demands for payment under insurance policies.

> 2. *Berg's conduct was not criminal as a matter of law.*

Separately, Allstate argues that because Berg's conduct allegedly violated a criminal statue—Penal Code section 550—it is not protected by the anti-SLAPP statute. We disagree. Although petitioning activity that is illegal "as a matter of law" is not protected by the anti-SLAPP statute, this exception only applies in "narrow circumstance[s]" in which the " 'the defendant *concedes*, or the evidence *conclusively establishes*, that the assertedly protected speech or petition activity was illegal, as a matter of law[.]' " (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 316.) Here, Mr. Berg's declaration states that Berg "unequivocally" denies engaging in the fraudulent conduct alleged by Berg. As such, Berg has not conceded it acted illegally. Mr. Berg's declaration also precludes a finding that Berg's conduct violated Penal Code section 550 as a matter of law, since such a violation cannot be established as a matter of law without conclusive evidence that Berg acted with the specific intent to defraud. (*People v. Blick* (2007) 153 Cal.App.4th 759, 773.)

Allstate's reliance on *Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435 to support its argument that Berg engaged in criminal conduct is misplaced. In *Gerbosi*, the plaintiff's cause of action against a law firm for invasion of

10

privacy was based on the firm's activity of "wiretapping in the course of representing a client," which was indisputably unlawful. (*Id.* at p. 446.) The court concluded that such activity was not protected by the anti-SLAPP statute, stating that "[u]nder no factual scenario . . . is such wiretapping activity protected by the constitutional guarantees of free speech and petition." (*Ibid.*) Berg's alleged conduct in this case relates to sending prelitigation demand letters which, unlike wiretapping, is not inherently unlawful conduct. Allstate's reliance on *Malin v. Singer* (2013) 217 Cal.App.4th 1283 is misplaced for similar reasons. The alleged unlawful conduct in *Malin* was computer hacking and wiretapping. (*Id.* at p. 1303.) Following *Gerbosi*, the court held that those activities "do not fit one of the categories of protected conduct defined by the Legislature in section 425.16, subdivision (e)." (*Ibid.*) Berg's conduct was far different from computer hacking and wiretapping.

To summarize, Berg's alleged wrongful conduct arose from protected petitioning activity that was not illegal as a matter of law. Accordingly, Berg has made a prima facie showing that Allstate's complaint is subject to an anti-SLAPP motion.

## C. *Probability of Prevailing on the Merits*

Having determined that Berg's alleged conduct is protected by the anti-SLAPP statute, we turn to the issue of whether Allstate has demonstrated a probability of prevailing on the merits of its complaint.

Berg argues that Allstate cannot demonstrate a probability of prevailing on the merits because Berg allegedly fraudulent conduct is absolutely privileged under the litigation privilege. Allstate counters that the litigation privilege does not apply for two separate reasons. First, relying on *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54 (*Shafer*), Allstate argues that the litigation privilege should not apply because "application of the litigation privilege in this case would be inconsistent with the purpose of [Insurance Code] section 1871.7." Second, Allstate argues that Berg's alleged fraudulent conduct was not "communicative" in nature, which it must be in order for the litigation privilege to apply.

11

The litigation privilege, as codified by Civil Code section 47, subdivision (b), "precludes civil liability, except for malicious prosecution, for 'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]' " (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 485.) "[T]hese requirements for invoking the privilege are based upon section 47(b)'s perceived purpose of affording litigants and witnesses 'the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.' In other words, the litigation privilege is intended to encourage parties to feel free to exercise their fundamental right of resort to the courts for assistance in the resolution of their disputes, without being chilled from exercising this right by the fear that they may subsequently be sued in a derivative tort action arising out of something said or done in the context of the litigation." (*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 29.) The litigation privilege has been given "expansive application" by California courts. (*Id.* at p. 29.) " 'Any doubt as to whether the privilege applies is resolved in favor of applying it. [Citations.]' " (*Tom Jones Enterprises, Ltd. v. County of Los Angeles* (2013) 212 Cal.App.4th 1283, 1294.)

       1.      *The reasoning of* Shafer *is inapplicable.*

In *Shafer*, the plaintiff sued an insurance company's attorney for fraud. (*Shafer, supra*, 107 Cal.App.4th at pp. 66-67.) The plaintiff claimed that when he attempted to enforce a judgment against the insurance company pursuant to Insurance Code section 11580,[8] the insurance company's attorney falsely represented that the insurance company had not agreed to indemnify its insured for willful acts when, it fact, it had. (*Shafer, supra*, 107 Cal.App.4th at p. 66.) The attorney argued that the plaintiff's fraud claim was barred because the litigation privilege protected his statements about insurance coverage.

_____

[8] Insurance Code section 11580 states, in pertinent par, that "whenever judgment is secured against the insured . . . , then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." (Ins. Code, § 11580, subd. (b)(2).)

12

(*Id.* at p. 67.)  The appellate court disagreed and held that "[t]he litigation privilege does not protect fraudulent statements intended to prevent an injured party from exercising his or her rights under [Ins. Code] section 11580." (*Id.* at p. 80.)  It provided several reasons supporting its holding.

First, the court found that an injured party seeking to enforce a judgment against an insurance company pursuant to Insurance Code section 11580 is a third-party beneficiary of the insurance policy.  (*Shafer, supra*, 107 Cal.App.4th at p. 80.)  As such, an insurance company owes a duty to act " ' as if such injured person had been specifically named in the policy." (*Ibid.*)  From there, the court continued:  "Counsel retained by an insurer has an obligation to be truthful in describing insurance coverage to a third party beneficiary.  The litigation privilege is not a license to deceive an injured party who steps into the shoes of the insured.  [Citation.]  Section 11580 grants an injured party the right to file suit in order to recover under the insurance policy. Coverage counsel may not commit fraud in an attempt to defeat that right." (*Id.* at p. 81.)

Next, the court stated that "to the extent there is a conflict between an injured party's rights under section 11580 and coverage counsel's reliance on the litigation privilege (Civ. Code, § 47, subd. (b)), the rights of the injured party prevail as they arise under the more specific of the two statutes." (*Id.* at p. 81.)

Finally, the court looked to the policies underlying the litigation privilege and concluded that they would not be frustrated even if the privilege was inapplicable to fraud claims under Insurance Code section 11580.  It reasoned that "a primary purpose of the litigation privilege is to safeguard litigants and witnesses from subsequent tort suits.  The privilege also encourages open channels of communication, promotes the zealous protection of clients' interests, and obligates litigants to expose the bias of witnesses and the falsity of evidence during trial.  [Citations.]  Those purposes are not frustrated where, consistent with section 11580, an injured party pursues a fraud claim against an insurer's coverage counsel." (*Shafer, supra*, 107 Cal.App.4th at p. 81.)  The court also believed that the privilege's purpose to enhance the finality of judgments and avoid endless litigation would not be frustrated because "an action under section 11580 is not a second

bite at the apple. The statute does not offer an opportunity to retry issues, reweigh evidence, or make a collateral attack." (*Ibid.*)

The reasons articulated by the court in *Shafer* for refusing to apply the litigation privilege are not present in this case. First, the third party beneficiary relationship that existed in *Shafer* is much different than the relationship between Berg and Allstate. Allstate, far from being a third party *beneficiary* of Berg, was a potential *adversary* of Berg that would engage in negotiations with Berg regarding personal injury claims. Because the relationship between Allstate and Berg differs from the parties' relationship in *Shafer*, it is much less likely that application of the litigation privilege in this case would allow the privilege to be used as a "license to deceive an injured party." (*Shafer, supra*, 107 Cal.App.4th at p. 81.)

Next, unlike Insurance Code section 11580, the rights of an injured party under the Insurance Code provision at issue here—section 1871.7—do not prevail over the litigation privilege as rights that "arise under the more specific of the two statutes." (*Shafer, supra*, 107 Cal.App.4th at p. 81.) The principle that a specific statute prevails over the litigation privilege applies only when a more specific statute "would be 'significantly or wholly inoperable' if the privilege applied." (*Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 339.) Here, even if we assume that Insurance Code section 1871.7 is more specific than the litigation privilege, it would not be rendered "significantly or wholly inoperable" by the litigation privilege. As pertinent here, Insurance Code section 1871.7 is predicated on a violation of Penal Code section 550. That penal code provision prohibits a wide array of conduct related to the false submission of insurance claims, most of which could arise before litigation is ever contemplated. As just two examples, the statute proscribes knowingly causing a vehicular accident for the purpose of presenting a fraudulent insurance claim, (Pen. Code, § 550, subd. (a)(3)), and misrepresenting an insured's state of domicile when obtaining motor vehicle insurance. (Pen. Code, § 550, subd. (b)(4).) It is difficult to foresee a party successfully asserting the litigation privilege in these circumstances, or many of the other circumstances the statute addresses.

14

Finally, unlike in *Shafer*, the failure to apply the litigation privilege in this case would frustrate the purpose of the privilege. The litigation privilege "places the obligation on parties to ferret out the truth while they have the opportunity to do so *during* litigation." (*Edwards v. Centex Real Estate Corp., supra*, 53 Cal.App.4th at p. 30.) As far as we can tell, Allstate had ample opportunity to discover Berg's alleged fraud after it received Berg's demand letters, which included a detailed listing of the medical treatment received by Berg's clients. Berg has instead raised the alleged fraud in this collateral case, thus undermining the litigation privilege's purpose of avoiding "an unending roundelay of litigation." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 214.) "To allow a litigant to attack the integrity of evidence after the proceedings have concluded, except in the most narrowly circumscribed situations, such as extrinsic fraud, would impermissibly burden, if not inundate, our justice system." (*Ibid.*)

Accordingly, we find *Shafer* distinguishable from this case, and conclude that application of the litigation privilege does not conflict with Insurance Code section 1871.7.

   2.      *The demand letters were communicative.*

Allstate also argues that the litigation privilege is inapplicable because the conduct alleged against Berg is not communicative in nature. We find no merit in this argument. "[T]he key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature." (*Rusheen v. Cohen, supra,* 37 Cal.4th 1048, 1058.) Here, the gravamen of Allstate's case against Berg is that Berg committed insurance fraud through the sending of prelitigation demand letters. Attorney demand letters such as these are a "classic example" of communicative conduct to which the litigation privilege applies. (*Edwards v. Centex Real Estate Corp., supra*, 53 Cal.App.4th at p. 35, fn. 10 ["The classic example of an instance in which the privilege would attach to prelitigation communications is the attorney demand letter threatening to file a lawsuit if a claim is not settled"].)

Having concluded that Berg's conduct was communicative, we also conclude that Berg has satisfied the other elements of the litigation privilege, which Allstate does not

dispute have been met.  Since the litigation privilege applies, Allstate cannot show a probability of prevailing on the merits in this case.[9]  Berg's anti-SLAPP motion should have been granted.

## DISPOSITION

The order denying Berg's special motion to strike the complaint is reversed, and the trial court is directed to enter a new order granting the motion.  Berg is entitled to its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

---

[9] Having determined that the litigation privilege applies, we need not address Berg's alternative argument that Allstate did not show a probability of prevailing on the merits because it did not put forth competent evidence to support its insurance fraud claim.  We also need not address Berg's contention that the trial court erred in overruling several evidentiary objections raised by Berg.

_____
REARDON, ACTING P. J.

We concur:


_____
RIVERA, J.


_____
STREETER, J.


*People v. Berg* A139054

17